In the Matter of the Estate of MORRY LEVINE, Deceased.

Surrogate's Court, New York County, June 24, 1935.

*Walter D. Wile*, for petitioner Arthur Levine, as surviving executor.

*Paul E. Mead [William A. Onderdonk* of counsel], for Irving Trust Company, respondent.

*William J. McArthur,* for United States Fidelity and Guaranty Company, *amicus curiæ.*

DELEHANTY, S.   A deceased executor of this estate received on August 9, 1934, a check for $3,526.20 in settlement of an insurance policy on the life of deceased which was payable to his estate.   The check was to the order of both executors as such.   On the back the deceased executor indorsed without authority the name of his coexecutor and added his own with the description of the representative character of both in conformity with the face of the check.   Thereupon he deposited the check to his own credit in a bank.   Next day the deceased executor procured from the same bank the first of a number of loans collateraled by negotiable securities delivered by this executor to the bank at the time the loans were procured by him.   In each instance the collateral so used was the property of the estate of deceased.   It was in each instance used without authority.

In this discovery proceeding the surviving executor seeks to recover the negotiable securities so pledged with respondent by the deceased executor to secure the collateral loans mentioned.   The answer interposed sets up the right of respondent to retain the securities because of the advances made by it to the deceased executor. In the course of the hearing proof was taken of the facts respecting the deposit of the insurance check and the use of the proceeds by the deceased executor and on the record the pleadings were conformed to the proof so that there is now presented the question whether the respondent has the right to retain the securities not only for its protection on the collateral loans but also for any liability which may be established against it in connection with the insurance moneys.   The collateral notes in each instance recite that the negotiable securities were deposited " as collateral security for the payment of this note and of any note or notes or other instrument or instruments given in extension or renewal thereof, *as well as for the payment of any and all other liabilities of the undersigned, or of either of them, to the Trust Company due or to become due, direct or contingent, whether now existing or hereafter arising, and whether created directly or acquired by assignment or otherwise."*

On the facts presented it must be held that the respondent bank took the securities in good faith and for value and without notice of any infirmity in the title to the securities.   In such circumstances it became a holder in due course within the meaning of the Nego-

tiable Instruments Law and thenceforth held the bonds free from any defect of title of prior parties. Whatever doubt there might have been on the subject was resolved by the Court of Appeals in *Gruntal* v. *U. S. Fidelity & Guaranty Co.* (254 N. Y. 468). On the authority cited it must be held that the bank had in respect of these bonds exactly the same position as if they were in truth owned outright by the depositing executor. On that premise the bonds may be held by the bank for any claim which it has against the depositor of the bonds provided the claim comes within the text of the collateral note. It is not possible to separate the terms of the collateral note and say that in respect of some of them the bank is entitled to hold the bonds while in respect of others it is not so entitled.

The extent to which the respondent bank is liable by reason of the deposit of the insurance company's check may be debatable. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Manufacturers Trust Co.* v. *United States Mortgage & Trust Co.*, 244 id. 550; *Clarke* v. *Public Nat. Bank & Trust Co.*, 259 id. 285.) The possibility of the existence of a claim suffices in the present instance as basis for holding that the bonds may be retained by the respondent bank until the full extent of its liability is known. Accordingly this discovery proceeding is dismissed without prejudice to the right of petitioner at an appropriate time to seek any surplus securities or the proceeds thereof remaining after the claims of respondent bank have been satisfied.

(Opinion on reargument, August 12, 1935.)

On this reargument counsel urges that the rights of respondent bank are covered by section 53 of Negotiable Instruments Law, which says: " When lien on instrument constitutes holder for value. Where the holder has a lien on the instrument arising either from contract or by implication of law he is deemed a holder for value to the extent of his lien." Even if this contention were admitted the result here is not changed. The holder of the bonds has a lien arising from contract, *i. e.*, the collateral note. That contract gives to the holder of the note the right to retain the collateral for the payment not only of the amount loaned on the collateral but also " of any and all other liabilities " of the maker of the note. As was said in the original memorandum it is not possible to separate the terms of the collateral note and say that the bank has a lien under part of the terms but no lien under the remainder of the terms.

There should be no misunderstanding of the extent of the original decision. It was limited solely to the question of right of possession

of the bonds. It held that the summary delivery of them would not be directed while there existed a reasonable basis for holding the bonds until the complete determination of the bank's rights in the bonds. No decision was made on what those rights are.

The application for reargument is denied.