In the Matter of the Estate of ALBERT F. VICINUS, Deceased.

Surrogate's Court, Monroe County, May 28, 1936.

*Clarence W. Haller* [*A. T. Pammenter* of counsel], for the petitioner.

*Harris, Beach, Folger, Bacon & Keating* [*K. B. Keating* of counsel], for the respondent.

FEELY, S. Petitioning under section 205 of the Surrogate's Court Act, the debtor's executrix asks the court herein to compel the creditor, the respondent bank, to surrender certain securities which it had taken over in the renewing of a loan with such collateral, to the testator; and the creditor answers that, although the note has been fully paid, the bank has the right, under the terms of the collateral note, to retain the same collateral as security for the payment of another loan made later by this bank to the testator, which was secured by his mortgage on land.

The undisputed facts are that on December 31, 1931, testator signed and delivered to a bank that has since merged in this respondent bank his own note, of which Exhibit 8 herein is a renewal, with this respondent; and that in said renewal note (Exhibit 8) testator promised and agreed to pay, on demand, the sum of $6,000 and interest, " having deposited and pledged [the securities now in question] as collateral security for the payment of this or any note given in extension or renewal thereof, and any other present or future liability, of the undersigned either direct or consignment [*sic.* contingent?], to the said Trust Company or its assigns, and whether now due or hereafter to become due."

The present controversy turns upon the words, " any other present or future liability " of the testator to the bank, which are used in all the notes above mentioned.

In 1925, when a similar note of testator was outstanding, of which the note (Exhibit 8) in question was a renewal by this respondent, testator borrowed from the respondent bank $5,000 on the bond of himself and wife, whereby this debt was to be repaid in one year from its date, with interest; and secured by their mortgage; and thereafter testator and his wife, who is now his executrix, borrowed $6,500 more, on the same terms, on their bond likewise secured by mortgage on their land. On these two bonds there is now due and owing the respondent bank the sum of $11,300 and interest from January 1, 1936. Both parcels of the mortgaged land were appraised by the bank on February 8, 1935, at $11,225.

Testator died November 6, 1935; and letters testamentary having issued to his wife, she paid the bank on January 28, 1936, the sum of $2,000 and interest from October 1, 1935, being the balance due

on the last renewal note which was made to this respondent, and she then received from the bank the note (Exhibit 8); and at the same time she demanded the return of the securities that had accompanied it and its predecessors as collateral, which about the time of her demand had a market value of $17,125. The bank declined to surrender this collateral, claiming to hold it, under the terms of the note, as additional security also for the payment of the mortgaged loans above mentioned.

Thereupon the executrix began this proceeding to compel a surrender. On her behalf, it is argued that the bank is required, by section 250 of the Real Property Law, first to exhaust its remedy against the mortgaged lands; and that in making the note the parties never contemplated any such application of the terms of the note as the bank now claims to make; and that under the moratorium the mortgage loan cannot be called.

The bank contends that until it sees fit to institute some positive action in the premises, to foreclose either on the land or on the collateralized stocks, or to begin action on the bond, it cannot be forced to change its original position, nor to surrender any of its security, or any property lodged with it under a pledge of such general scope as Exhibit 8 expresses.

There is no evidence in the case from which one could infer that the parties at any time intended either that no contingent or other liability should be secured, or that the security posted would not be applicable to a mortgage debt; nor is there any evidence of waiver. A question of law remains, as to the effect of the words of the note, " any other present or future liability " of testator to the bank. They recur elsewhere in the note, in connection with the power therein conferred upon the payee to sell the collateral and to apply the net proceeds of the sale, after expenses, " to the payment of this note and of any other liability or liabilities, whether due or not due," of the maker to the payee; and finally, the same general idea underlies the provision that " any moneys or *other property* at any time in the possession of said Trust Company, belonging to any of the parties liable * * * may be held and treated as collateral security for the payment of this note or *any other liability* of the undersigned or any of the parties hereto to said Trust Company, whether due or not due." This repeatedly making not only these securities but also other moneys or property available not only to these notes, with renewals and extensions thereof, but also to other liabilities, present or future, together with the waiver of maturity, emphasize the intention of the parties to this written contract to make the pledge of this collateral a general one, rather than one limited to this particular line of credit.

This "note" class is exhausted by the words "this or any note given in extension or renewal thereof;" and outside that note class there might well have remained in view "other" liabilities to the bank such as for new loans, overdrafts, uncollectible items of deposit, indorsement of third parties' paper, etc., which take this phraseology out of the rule of *ejusdem generis*, or *noscitur a sociis* in so far as this particular note or its renewals were concerned. The words "or any other present or future liability," whether direct or contingent, cannot be restricted to this note or its renewals, for that line was specifically covered before this clause added a new class. It may be that unmistakably clear general wording in a written contract was not by the parties foreseen in detail to be capable of an unexpected particular application, fairly within the general class defined in the agreement, and yet they cannot claim they did not intend it should be so applied. "The law presumes that the parties understood the import of their contract, and that they had the intention which its terms manifest." (6 R. C. L. 835; *Knight* v. *Kitchin*, 237 App. Div. 506, 511.) Explicit and positive language must be given its obvious meaning. Security posted as collateral "for all liabilities incurred by" the pledgor cannot be restricted to the initial note with which it was put up. (*Agawam Bank* v. *Strever*, 18 N. Y. 502; *Moors* v. *Washburn*, 147 Mass. 344; 17 N. E. 884.)

There is no question in this case as to the obligations all being those of testator directly to this respondent, and not those incurred by him to a third person and acquired by the respondent, as was the case in *Gillet* v. *Bank of America* (160 N. Y. 549).

Moreover, the agreement contained in this note (Exhibit 8) is but a repetitious renewal of the terms of the original agreement to the same effect; and as the renewals with this respondent, on the same terms throughout in so far as security is involved, originated before the loans were made between the same parties on the mortgage security, it may well be that these later loans were made to the obligor on the faith of his credit standing with the bank under these agreements collateralizing broadly and generally the securities now in question.

In so far as this testator secured the loans on his land on the strength of his bond and credit standing at the bank, enhanced as it was by the bank's possession of the securities now in question under such a broad general pledge, these securities can be said to have become, by the special agreement in this series of notes, a separate and additional primary source of payment of the land loans, under the rule laid down in *Wright* v. *Holbrook* ([1864] 18 Abb. Pr. 202; affd., 32 N. Y. 587). There a testator, under a con-

tract to purchase land, gave the vendor, as part of the purchase price, his note secured by a pledge of certain shares of stock; and upon his death his devisee of this land was held to have the right to have such vendor's lien paid out of the personal property, notwithstanding the statute (Real Prop. Law, § 250) places on a devisee of an equity in land the burden of discharging the lien without recourse to the personal estate of the testator.

A mortgagee who has nothing but his mortgage as security is in a different position from one who also has other security. As between either a devisee and an executor, or an heir and an administrator, the statute last quoted makes the land bear the burden, before the personalty is drawn upon; but as between the creditor and both the heir and the devisee, this statute does not take away any rights the creditor may have, but the common law persists to the extent of making the creditor first exhaust his sole mortgage remedy against the land before resorting to the personalty, like a general creditor, for any shortage, in the absence of any special contract giving him any primary rights in the personalty as an immediate source of payment, independent of the mortgage. It is only where the testator has not given the mortgagee additional security that the latter must, by common law, exhaust his remedy against the land before he makes claim for any shortage in a surrogate's liquidation, as a claim against the estate. The crucial point in the case at bar is that the testator by special contract in writing had given the mortgagee additional security; and for this reason section 250 of the Real Property Law is not applicable. It is elementary that a creditor, having in his actual possession one or two sorts of security, is not obliged to resort to either, but may collect through execution on a judgment on the debt itself; and turn about, he is not obliged to resort to his action, but may rely on either of his securities. No court, at the instance of the debtor, can compel the creditor to forego any of his substantive privileges in the premises. So, it has been held that it cannot be inferred from the mere fact that the Statute of Limitations has suspended the remedy by action on a note, that the debt itself was thereby paid where the payee still held possession of securities that had been pledged as collateral; and it has also been held that after the bar had fallen, the pledgee bank would not be compelled, at the suit of the debtor, to surrender the collateral (*Jones* v. *Merchants' Bank of Albany*, 6 Robt. 162); nor to refrain from selling it (*House* v. *Carr*, 185 N. Y. 453); and as for remedies, the loss of one of two consistent ones left the other unimpaired. A creditor is entitled to prove his claim against an insolvent estate for the full amount and receive his dividend thereon, irrespective of the value of the col-

lateral securities to which he is entitled to resort. (*Hoppenstedt* **v.** *Amy*, 174 N. Y. Supp. 742.)

The executrix also argues that the refusal of the pledgee bank to surrender this collateral security, until the mortgage debt had been paid, amounts to calling in the past due principal of the bond, secured by the mortgage, in the absence of any other default; and that by this means the obligee is accomplishing indirectly an object that the moratorium statutes temporarily prevent. The pledgee's reply is that it has not begun any action on the bond, but is merely retaining its collateral security against the demand of the debtor's executrix, the moving party in this proceeding seeking to compel such surrender without paying the debt.

Several times since 1933 the Legislature has extended the effect of the original act declaring an emergency existed; and in the preamble of the act of 1933 there is set out, among the reasons for suspending certain remedies, the specific reason that there exists an " abnormal deflation of real property values." The act accordingly provided that the mere fact that the bond in a mortgage loan had become past due was no ground for bringing an action on the bond; nor to foreclose the mortgage lien on the land; and the act also provided that the value of the land had to be shown to be less than the debt in order to warrant the granting of a deficiency judgment; and that if action were brought upon the bond, the value of the land could be offset. These emergency restrictions on real property remedies are based on the idea that the " abnormal deflation of real property values " might afford the creditor an opportunity in remedial law for unfair enrichment in such a state of the land market. (Laws of 1933, chap. 794.)

Even if the pledgee bank were to be considered a plaintiff or moving party herein in that it is refusing to surrender its security at the suit of the petitioning executrix of the debtor, the bank's refusal is not an action on the bond, although the effect of it will be to discharge the bond; nor does the refusal take any advantage of remedial law in the deflated land market; nor does the refusal deprive the debtor of any rights whatever in the mortgaged land, or in any other property but what has been pledged. The pledgee bank's position is not within either the spirit or the letter of the moratorium statutes; and it would not be even if the bank had begun an action to foreclose its lien on these chattels now in question, instead of standing on its rights as a defendant respondent. The bank would then be enforcing the contract of pledge against this personalty, rather than the contract of mortgage against the realty. So where a pledgee bank sued the maker on a promissory note, secured by personal property as collateral, the moratorium pro-

visions did not apply because this action was not upon a bond in a mortgage loan, which is the particular remedy restrained by section 1083-b of the Civil Practice Act. (*First Trust & Deposit Co.* v. *Potter*, 155 Misc. 106.)

Far clearer language than the moratorium act anywhere contains would be required to warrant the conclusion that the intention was to suspend the well-known " banker's lien," whereby the bank may look to deposits or property in its hands for the repayment of any indebtedness to it by the depositor (*Delano* v. *Equitable Trust Co.*, 110 Misc. 704; *Matter of Wilkins*, 131 id. 188); and recently it has been held by a decision of the Supreme Court in this district that a bank is not barred from setting off against a depositor's account the amount of a matured mortgage indebtedness, which the depositor had assumed, by the moratorium statutes relating to actions or proceedings brought to foreclose mortgages, or to sue upon the bond, or to enter a deficiency judgment, since the setoff is not an action, and the disability created by the moratorium statutes relates to the enforcement of the cause of action and not to the cause of action itself. (*Kress* v. *Central Trust Co.*, 153 Misc. 397.)

Moreover, from the viewpoint of equity and fairness, the debtor's course of action herein seems to be an attempt on her part to take advantage of the moratorium statute during the " abnormal deflation in real property values," at the expense of her creditor, and to use the statute as a sword rather than a shield. Petitioning executrix, as co-obligor with her testator on the bond, is now bound to pay the bank $11,300, and yet she seeks to force the bank to look for its money to $11,225 worth of real property, at some indefinite time in the future, and in a state of land values quite unpredictable, if and when recourse to this land can be had under the statutes; while she presently takes over from the bank these collateralized securities on which she can at once realize $17,125; and yet does not give the bank any assurance whatever that her financial responsibility will remain unchanged until the time when the land shall have failed to satisfy her bond. " The possibility of the existence of a claim suffices in the present instance as a basis for holding that the bonds may be retained by the respondent bank until the full extent of its liability is known. Accordingly this discovery proceeding is dismissed." (*Matter of Levine*, 156 Misc. 836.) There an executor brought a " discovery " proceeding against a bank to recover securities pledged to it under a collateral note which was held to be a contract giving " the holder of the note the right to retain the collateral for the payment not only of the amount loaned on the collateral but also ' of any and all other liabilities ' of the maker of the note."

My conclusion is that, under the terms of the agreement of these parties as expressed in Exhibit 8, the petitioner, as executrix of the pledgor, now has no right to compel the pledgee to surrender the collateralized securities held by it under a general and not a special pledge, notwithstanding the payment of the balance of the original cash loan; and that petitioner cannot compel such securities to be surrendered until all the other and subsequent indebtedness of the testator to the pledgee shall have been first paid, notwithstanding it be secured by mortgage on land; and that the respondent is entitled to have a decree entered, in accord with its prayer for relief, dismissing this petition on the merits, with costs against the estate of testator, to be taxed.

Enter a decree in accord with this decision, on notice to counsel.