OPINION OF THE COURT
J. Robert Lynch, J.
The defendant Massachusetts Mutual insured the life of Carl E. Anderson for $100,000, with his father, the defendant Carl J. Anderson, beneficiary. The insured son borrowed from the defendant First Federal Savings & Loan, $65,000 at one *583 time and $10,000 at another, the loans being secured by an assignment of the insurance policy and a mortgage on his home, the title of which was in his name alone.
The son died, leaving surviving his wife, Gail Anderson, who, as administratrix of her husband’s estate, is the plaintiff here. The father, Anderson, made claim on the policy, and the insurance company, after receiving from the defendant First Federal Savings & Loan a release of assignment, paid the father $95,586.10, the face amount of the policy adjusted for a policy loan and interest.
Claiming that First Federal Savings & Loan should not have released its assignment to look only to the mortgage as security, but should have had first recourse to the proceeds of the insurance policy to reduce the decedent’s debt, the administratrix commenced this action, triggering denials from the defendants and cross claims among them. All parties concede that there are no issues of fact. Each has moved for summary judgment.
It is a principle of common law that a security interest made for the benefit of the secured party may be released by him at his pleasure. "It is elementary that a creditor, having in his actual possession one or two sorts of security, is not obliged to resort to either, but may collect through execution on a judgment on the debt itself; and turn about, he is not obliged to resort to his action, but may rely on either of his securities” (Matter of Vicinus, 159 Misc 903, 908; see, also, Kennedy v Strobel, 77 Hun 96; 53 NY Jur, Secured Transactions, § 248). This principle should be dispositive here unless it can be found that the assignment of the policy was intended to benefit others than the lender.
The rights of heirs or distributees of a decedent who secured a debt with a policy on his life have usually been determined in New York in actions where the beneficiary of the policy has sued to recover from the estate the difference between the amount of the policy and the amount paid to the creditor to extinguish the debt. (See Matter of Stafford, 278 App Div 612; Friedlander v Scheer, 1 Misc 2d 899, affd 281 App Div 808; Matter of O’Meara, 193 Misc 790; Matter of Kelekian, 1 Misc 2d 886.) Ultimately the Court of Appeals ruled upon these rights in Walzer v Walzer (3 NY2d 8), holding that the beneficiaries of the policy could proceed against the assets of the estate unless there was a clear indication that the deceased intended otherwise. In response to Walzer, the Legisla *584 ture enacted chapter 588 of the Laws of 1965, now embodied in EPTL 3-3.6 (Hoffman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-3.6, pp 350-353). The plaintiff contends that this section requires that First Federal Savings & Loan seek recourse first against the insurance policy and that she is, therefore, entitled to summary judgment. We do not read the section that way.
Shorn of verbiage not pertinent, EPTL 3-3.6 reads:
"(a) Where any property, subject, at the time of decedent’s death, to any * * * security interest * * * is specifically disposed of by will or passes to a distributee, or where the proceeds of any policy of insurance on the life of the decedent are payable to a named beneficiary and such policy is subject to any * * * security interest * * * the personal representative is not responsible for the satisfaction of such encumbrance out of the property of the decedent’s estate * * * unless, in the case of a will, the testator has expressly or by necessary implication indicated otherwise * * *
"(b) Any such encumbrance is chargeable against the property of the decedent or the proceeds of a policy of insurance on the life of the decedent, subject thereto.”
The statute applies to two disparate situations: where a decedent’s property is subject to a security interest; where the proceeds of insurance on a decedent’s life are subject to a security interest. It is to be construed to mean that in either of those situations recourse must be had to the particular security rather than to the general unencumbered assets of the estate. By no exercise of construction can the statute be interpreted to direct that a creditor whose debt is secured by both a policy and a mortgage must seek payment first from the policy. As to priority of recourse the statute is silent.
On the other hand, the defendants, in contending that Jemzura v Jemzura (36 NY2d 496, 501) makes "the mortgaged premises * * * the primary source for payment of the mortgage debt”, take the language out of context. The holding of Jemzura is that, in accord with EPTL 3-3.6, the mortgaged premises, not the assets of the estate or the distributees, are the primary source for payment.
There have been cases in other jurisdictions where a decedent’s debt has been secured by real estate and an insurance policy and the beneficiaries have sought to be subrogated to the creditor’s right to foreclose the mortgage. In them priority was made to depend on intention, whether "it was the inten *585 tion of the parties to the loan transaction that the policy should first be applied to the payment of the debt, or whether it was intended that the real estate should first be used to satisfy the indebtedness” (Right of life insurance beneficiary against estate of insured who used policy as collateral, Ann. 91 ALR2d 496, 504). One of these cases granting subrogation to the beneficiaries contains a rationale that is singularly applicable to the case at hand. "[The insured] exercised his power to pledge the policies as collateral security, in the event of his death, for a debt he was about to incur. That was all he did. He did not undertake to make a formal change of beneficiaries, either in whole or in part. If he had wished to have the insurance go to pay the debt in any event and to the enrichment of his estate, he could have made his creditor the designated beneficiary to the extent of its claim. His failure to do this is significant of his purpose in the execution of the power. It evidences his design to secure his prospective creditor, and at the same time not to impair the beneficiaries’ title beyond what was necessary to protect the lender” (Barbin v Moore, 85 NH 362, 371).
From the conceded facts and by the same reasoning expressed in Barbin, we must conclude that it was not the intention of the defendant First Federal Savings & Loan and the son, Anderson, that the proceeds of the policy should first be applied to the payment of the debt; that it was the son’s intention not to impair his father’s interest in the policy beyond what was necessary to protect the lender. Feeling that the proceeds of the policy were unnecessary for the protection of its interest, First Federal Savings & Loan was entitled to release the assignment of the policy.
Summary judgment must be denied to the plaintiff, and granted to each defendant dismissing the complaint and all cross claims.