Van Voorhis, J.
The questions certified require us to decide whether or not the complaint should have been dismissed on motion for summary judgment. The action is brought against the estate of an insured by the beneficiaries of three life insurance policies, who seek to be reimbursed on account of an indebtedness owing by the decedent to a bank which collected from the proceeds of his life insurance instead of from his estate. Special Term held that the beneficiaries under these policies must bear the burden of paying this indebtedness. Upon the other hand, these insurance beneficiaries contend that the estate is the primary source from which the debts of the decedent should have been paid, and that they are entitled to be reimbursed from the estate by subrogation. The Appellate Division agreed with the beneficiaries, at least in holding that there is a triable issue.
Prior to July 21, 1941, the decedent had obtained $35,000 of life insurance upon his own life. On that date he borrowed $20,100 from Berks County Trust Company. This bank at the same time took assignments from him of these policies “as collateral security” for all existing or future liabilities of the decedent to the bank. When this loan was made in 1941 and for eight years thereafter, the policies provided that the proceeds would be payable to his estate and to an insurance trust, but on August 26, 1949 the insured decided to change the beneficiaries to his two daughters who are the plaintiffs herein. The change of beneficiary form which he executed in 1949 recited that the insurance would be payable to his daughters in equal shares, or all to the survivor of them “ Subject to prior assignment, to Berks County Trust Company dated July 21, 1941.” This clause was inserted in compliance with the terms of the collateral assignment to the bank in 1941 which, although reserving to decedent “ The right to designate and change the beneficiary ”, required him to agree that “ any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.”
“ It is clear that if a policy of life insurance is assigned as collateral for a debt without changing the beneficiary, then the primary obligation for the debt is that of the estate of the insured, and, in the event the creditor collects out of the policy, subrogation results and a right to collect from the estate *12 descends to the beneficiary. (Matter of Stafford, 278 App. Div. 612; Matter of Cummings, 200 Misc. 467, supra; Matter of Van Hoesen, 192 Misc. 689, supra; Matter of Kelley, 160 Misc. 421, affd. 251 App. Div. 847, motion for leave to appeal denied 276 N. Y. 689, supra; Chamberlin v. First Trust & Deposit Co., 172 Misc. 472, supra.) ” (Dissenting opinion by Breitel, J., italics from original, at the Appellate Division, 1 A D 2d 482, 488.) There has been no difference of opinion on that point in this case in any of the courts. It of course lay within the power of the insured to designate the bank as primary beneficiary, and his daughters as secondary beneficiaries. That is what he would have done if his intention had been to entitle them to receive only the balance payable under the policies, after the bank loan had been paid from the insurance. Whether that is what the insured intended to do is to be ascertained from the language of these documents interpreted in their context. It is plain that the bank was not designated as primary beneficiary when the loan was made in 1941 and the policies were assigned to the bank as collateral security. If the bank ever became primary beneficiary as distinct from merely holding the policies to secure its loan, that result must have been accomplished by the change which the insured made in the beneficiaries eight years after the inception of the loan. The contention of appellant is that by executing the change of beneficiary form in 1949 the decedent intended to abbreviate the rights and benefits which the new beneficiaries would possess in comparison with those of the former beneficiaries. The only part of the change of beneficiary form that decedent executed in 1949 which is said to have done this is the clause which has been mentioned, stating that the change of beneficiary was made subject to the assignment to the bank. This was done pursuant to the decedent’s covenant in the instrument of collateral assignment to the bank in 1941, that if he afterwards changed the beneficiaries he would do so subject to the “ rights of the Assignee ” under the assignment.
There is no reason to believe that in using this language the insured had any intention to do more than apprise the new beneficiaries that the policies had already been assigned as collateral security to Berks County Trust Company. By inserting this clause in compliance with the covenant made by the insured in his instrument of assignment to the bank in 1941, *13 there is no reason to believe that he meant to create a new and different relationship between himself and the bank from that which had existed during the intervening eight years while the loan had been outstanding. The bank had obtained whatever protection it required in 1941 when the loan was made. If it had insisted upon being made the primary beneficiary under these policies, it would have done so then. Instead, it took an assignment as collateral security coupled with a promise on the part of the insured that he would do nothing through the exercise of his reserved power to change the beneficiary which would impair the protection that the bank possessed. There was nothing in the instrument of assignment of 1941 or the change of beneficiary form in 1949 which evinced an intention on the part of either the bank or the insured to alter the relationship between the insured" and the objects of his bounty. The natural inference is that when he substituted his daughters as beneficiaries in 1949, the decedent intended to place them in the same relationship to himself and the bank that had been occupied by the former beneficiaries. Both before and after the change of beneficiaries, the bank was simply the assignee of the policy to secure its loan. It had the right to resort to the policies or to the decedent’s estate to collect its indebtedness, but, in the absence of some expression of intent in the document by the decedent himself, the rights of the beneficiaries are not affected by whether the bank elected to resort to the estate or to the policies in order to satisfy the debt.
Nothing to the contrary was held in Matter of Kelley (251 App. Div. 847, motion for leave to appeal denied 276 N. Y. 689) or in Matter of Kelekian (281 App. Div. 877). In the latter case the change of beneficiary form, executed by the insured, expressly stated that the new beneficiary should be entitled to only such amount of the proceeds of the assigned insurance policy as remained after the retirement of his indebtedness to the assignee. This contrasted with the manner in which he dealt with another insurance policy upon his life at the same time.
Matter of Kelley (supra) more nearly resembles the present case in the language of the change of beneficiary form, which contained a clause stating that the change in beneficiary is made subject to an assignment of the policy to secure an indebtedness to the assignee. The reason for holding that this altered *14 the relationship between the insured and the object of his bounty was that there the same person was designated as the new beneficiary who had been named as beneficiary before the change. There could have been no object in the execution of any change of beneficiary form by the insured, unless it had been to change the relationship between the beneficiary and the bank. The words employed in the change of beneficiary form were construed in that context, but were not frozen into words of art. The usual interpretation of such language is that which is given here. But it lies within the power of parties to contracts to make their own glossary (Aron v. Gillman, 309 N. Y. 157, 161), and the unique facts presented in the Kelley case indicated that they did so there.
The rule for ascertaining intention respecting the disposition of proceeds of life insurance among the objects of a decedent’s bounty, under these circumstances, differs from the case of estate property which is subject to a lien. Section 20 of the Decedent Estate Law, adopted in 1941, changed the rule regarding pledges of personal property specifically bequeathed, so as to correspond to the rule regarding real property established by section 250 of the Beal Property Law. Section 20 of the Decedent Estate Law now provides that where personal property subject to any lien, mortgage or pledge is' specifically bequeathed by will, the legatee must satisfy the lien out of his bequest without resorting to the executors of his testator, unless the will otherwise provides. The Surrogates’ Association of New York State recommended that similar legislation be enacted with reference to insurance policies, but it failed of passage (cf. Matter of Van Hoesen, 192 Misc. 689, 694). In the absence of an act of the Legislature in the case of life insurance paralleling the provision enacted into the Decedent Estate Law by section 20 in 1941, no occasion is presented to change the established rule which entitles the beneficiaries of life insurance to subrogation under the circumstances presented here.
The order appealed from should be affirmed, with costs, the second question certified should be answered in the affirmative (that Special Term did err in granting the motion for summary judgment), the third question certified should be answered in the negative (that the Appellate Division did not err in reversing Special Term). The first question certified is not answered.