209 So.2d 424

**Lucian M. ROUNTREE, Administrator et al.**

**v.**

**Minnie Lee Alexander FRAZEE.**

**2 Div. 502.**

Supreme Court of Alabama.

April 11, 1968.

B. M. Miller Childers, Selma, for appellants.

Pitts &. Pitts and J. Garrison Thompson, Selma, for appellee.

PER CURIAM.

This appeal is to review a final decree of the Circuit Court of Dallas County, in Equity, which gave appellee relief on her complaint to recoup a sum of money on a life insurance policy which was assigned to a mortgage creditor and upon death of the insured, the amount of the policy was paid to the creditor.

We now advert to the undisputed facts leading up to the litigation. Appellee and the insured, William Josiah Rountree, were man and wife when the Equitable Life Assurance Society of the United States on April 6, 1956, issued a life insurance policy in the sum of $15,000 on the life of the husband, naming appellee as beneficiary. The policy was issued to the insured at his instance. He paid or caused to be paid all the premiums.

Following negotiations suggested by the local agents of Equitable, Mrs. Margaret Miller Childers, one of the appellants, loaned the insured $15,000, secured by a mortgage on some real estate owned by the insured. The insured, on May 18, 1956, assigned the policy to Mrs. Childers as collateral security for the loan. The loan was consummated on the date the policy was assigned; the policy was also delivered on the same date. The assignment was made on a form furnished by the insurance company. The form was filed with the company. The policy provided that the assignment could be made without the consent of the beneficiary, and it also permitted a change of beneficiary without the consent of the named beneficiary. The wife joined in the mortgage, but not the assignment.

Appellee and her husband, William Josiah Rountree, the insured, were divorced in Dallas County in 1958. There were no children born to their union. The parties entered into a separation agreement with respect to certain property rights. This agreement was approved by the trial court rendering the decree of divorce, and was incorporated into and made a part of the final decree.

We quote paragraphs 3 and 6 of the agreement, which appellants contend are relevant to the issues involved in the instant suit:

"3. Subject to the provisions of this agreement, each party has released and discharged and by this agreement, does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, release and discharge the other of and from all causes of action, claims, rights or demands whatsoever in law or equity which either of the parties ever had or now has against the other, except any or all cause or causes of action for divorce."

"6. Except as herein otherwise provided each party may dispose of his or her property in any way, and each party

hereby waives and relinquishes any and all right, he or she may now have or hereafter acquire, under the present or future laws of any jurisdiction, to share in the property or in the estate of the other as a result of the marital relationship, including without limitation, dower, thirds, curtesy, statutory allowance, widow's allowance, homestead rights, right to take in intestacy, right to take against the will of the other, and right to act as administrator or executor of the others estate, and each party will at the request of the other execute, acknowledge, and deliver any and all instruments which will be necessary and advisable to carry into effect this mutual waiver and relinquishing of all such interest rights and claims."

The insured died on September 13, 1962, unmarried, and without making application for a change of beneficiary. The proceeds of the insurance policy, namely, $15,000, were paid to the assignee, Mrs. Childers, which sum was credited on December 11, 1962, to the mortgage indebtedness, leaving a balance unpaid of $4,945.15. Neither the credit nor the balance is disputed or challenged. Appellee was not responsible for the debt.

The trial court, pursuant to the pleading, entered a declaratory final decree which favored the named beneficiary, who is the appellee. The decree, meeting the aspects of the declaratory petition and the prayer for relief, held that the estate of decedent, the insured, was indebted to appellee (complainant below) in the sum of $15,110 with interest at the rate of 6% from December 11, 1962 (the date the insurance company paid the insurance money to the assignee) "by reason of The Equitable Life Assurance Society of the United States paying the proceeds of life insurance policy No. 15062681, in which the Complainant was the named beneficiary, to the Respondent, Margaret Miller Childers." Claim for this amount had been duly filed with the Probate Court.

The court also decreed that the complainant (appellee) was subrogated to the right of Mrs. Childers under the mortgage of Mr. Rountree to Mrs. Childers to the extent of $15,110 with interest at 6% per annum from December 11, 1962.

The decree provided that in the event the balance of the mortgage debt is paid, Mrs. Childers was to transfer, assign and convey to complainant said mortgage, the debt secured thereby, and the property described therein, with authority of the transferee to foreclose the mortgage.

The decree also granted complainant (appellee) a lien on the mortgage and on the land described therein to secure the indebtedness of the estate of said decedent to the complainant.

As we view the assignments of error and the contentions of the parties as here presented and argued, the issues are encompassed as follows:

(1) Did the divorce extinguish appellee's rights as an eligible beneficiary?

(2) Did the assignment of the policy amount to a change of beneficiary?

(3) Did the divorce agreement preclude appellee from asserting any claim against the estate of the insured or to the insurance money or its equivalent?

(4) Was appellee entitled to be subrogated to the mortgage?

■ Although the complainant, as the wife of the decedent, had an insurable interest in the policy here under consideration, such insurable interest was not necessary to make her an eligible beneficiary. One may take out a life insurance policy on his own life and make it payable to whom he desires, and may name anyone as a beneficiary regardless of whether he has an insurable interest. National Life & Accident Ins. Co. v. Alexander, 226 Ala. 325, 147 So. 173; Metcalf v. Montgomery, 229 Ala. 156, 155 So. 582. The fact that the named beneficiary ceases to be the wife of the insured would not affect her

eligibility to continue as the beneficiary. The absence, after divorce, of an insurable interest would not present a status any different from that which would exist if she had never been married to the insured. We conclude that the divorce per se did not affect or defeat any of appellee's rights as the designated beneficiary. McGrew v. Mutual Life Ins. Co., 132 Cal. 85, 64 P. 103; Filley v. Illinois Life Ins. Co., 91 Kan. 220, 137 P. 793; Overhiser's Adm'x v. Overhiser, 63 Ohio St. 77, 57 N.E. 965; Guarantee Fund Life Ass'n v. Willett, 241 Mich. 132, 216 N.W. 369; Marquet v. Aetna Life Ins. Co., 128 Tenn. 213, 159 S.W. 733; Christman v. Christman, 163 Wis. 433, 157 N.W. 1099.

■ Appellants contend that the assignment of the policy to the mortgagee had the effect of changing the beneficiary thereby divesting appellee of any interest in the policy. The case of Merchants' Bank v. Garrard, 158 Ga. 867, 124 S.E. 715, is cited in support of this contention. We have examined this case and will not undertake to differentiate the facts, if such could be done, from those in the instant case. We are not in accord with the holding that the assignment constituted a change of beneficiary. We do note that the appellate court ordered the balance of the insurance money, after the debt to the assignee had been satisfied, to be paid to the original beneficiary. The court must have construed that the assignment was only a *pro tanto* change of beneficiary.

We are impressed with the opinion of the Supreme Court of Louisiana in the case of Douglass v. Equitable Life Assurance Society, et al., 150 La. 519, 90 So. 834, which held that the beneficiary could be changed only in the manner specified in the policy. The policy there under consideration authorized, as in the instant policy, a change of beneficiary without the consent of the named beneficiary. By coincidence the appellee insurance company is the same company which issued the policy in the instant case.

It was said in the *Douglass* case, supra:

"It is the settled jurisprudence that, where a policy is made payable to a certain beneficiary his interest can only be divested in favor of another beneficiary by the insured changing the contract in the manner which the contract points out that it must be changed to effect that result; and it was not so changed in this case. See N. Y. Life Ins. Co. v. Murtagh, 137 La. 760, 69 South. 165. * * *" (90 So. 837)

The instant policy provides that:

"By written notice to the Society, the Owner may from time to time prior to to the death of the Insured change the beneficiary, * * * but any such designation of change shall be effective only if it is endorsed on this policy by the Society * * *.

"Upon endorsement hereon by the Society, a change of beneficiary * * * shall take effect as of the date the written notice thereof was signed, * * *"

There is no contention here made that written notice of the change of beneficiary was given the company. There is no endorsement on the policy that the beneficiary had been changed.

■ The matter of change of beneficiary and assignment of policies are two separate and distinct things. An assignment is the transfer by one of his right or interest in property to another. The power to change the beneficiary is the power to appoint. Williams v. Williams, 276 Ala. 43, 158 So. 2d 901; Taylor v. Southern Bank & Trust Company, 227 Ala. 565, 151 So. 357.

■ We now consider the effect of the agreement of appellee and her husband, the insured, with respect to their property rights. We have examined this agreement very closely and conclude therefrom that it did not embrace the expectancy of appellee as the beneficiary of the policy here involved.

Paragraph 3 of the agreement, supra, released and discharged the husband from all causes of action, claims, rights or demands, in law or in equity, which the parties ever had or now have against the other. It is to be noted that at the time this agreement was executed, the claim for the insurance had not ripened into a vested right. The claim, rights and demand now asserted neither existed at the time of the execution of the agreement nor before. In fact no claim now being asserted is against the husband. The claim is based on a vested right that accrued after the husband's death, namely, to collect insurance money on his life payable to appellee as the beneficiary, which money was used pursuant to an assignment to pay off his debt in part to the mortgagee.

Paragraph 6, supra, of the agreement provides that:

"* * * each party hereby waives and relinquishes any and all right, he or she may now have or hereafter acquire, under the present or future laws of any jurisdiction, to share in the property or in the estate of the other *as a result of the marital relationship,* including * * * dower, thirds, curtesy, statutory allowance, widow's allowance, homestead rights, right to take in intestacy," etc. * * * (Emphasis supplied)

The interest which appellee acquired in the policy as the beneficiary was not the result of marital relationship, although such appointment might have been influenced by the fact that appellee and the insured were man and wife. Simmons v. Simmons (Tex.Civ.App.), 272 S.W.2d 913; Wallace v. Mutual Benefit Life Ins. Co., 97 Minn. 27, 106 N.W. 84. Such interest does not fall within the property benefits (dower, thirds, curtesy) which are the result of marital relationship under present or future laws. The insurance benefits for appellee as the beneficiary in the policy arise out of a contractual—not a marital—relationship.

Nowhere in the assignment or in the transaction between the insured and the mortgagee do we find any agreement that the insurance money was to be the primary security for the payment of the mortgage debt. The mortgage creditor had the option at her election to resort to the insurance money or the real property for the payment of the debt. If the mortgagee had resorted to the real property described in the mortgage, then certainly in the event the debt was paid from the exhaustion of the real property or a sale thereof, appellee would have been entitled to the insurance as the named beneficiary in the policy.

But the mortgagee elected to collect and apply the insurance money in *pro tanto* extinguishment of the mortgage debt. The debt was that of the insured, and not that of appellee. The husband lawfully pledged appellee's insurance money for the payment of this debt. But, as we have pointed out, he did not make this fund a primary pledge to secure the debt. Should appellee be deprived of this fund at the whim of the mortgagee and free the other security, i. e., the real estate of decedent's estate, from any obligation to pay the debt? We do not decide the point, but we have serious doubts that the mortgagee could have been restrained from exercising her option. However, we think that equity has the power to make an adjustment that will protect the beneficiary, namely, appellee, from having to pay the debt which was not hers.

We are impressed with and approve the reasoning of some of the cases pertinent to subrogation which appellee cites. We credit appellee with a concise statement of facts in these cases.

In In re Brock's Will, Sur.Ct., 208 N.Y. S.2d 772, 776, it is said:

"The testator during his lifetime had pledged life insurance polices as collateral to secure loans from a bank. On his death the creditor satisfied its claim out of the proceeds of the policies and the balance of the proceeds was paid to testator's wife, who was named as the beneficiary in the policies. Under these circumstances, it is well established that the named beneficiary is subrogated to the rights of the creditor, and accordingly the claim of the wife for the portion of the insurance proceeds paid in satisfaction of the debt is allowed. (Cases cited)."

The holding of the Supreme Court of Pennsylvania in the case of In re Miller's Estate, 402 Pa. 140, 166 A.2d 10–11, is thus summarized in the brief:

"Here * * * the insurance policy is merely collateral for a loan from the bank. The creditor in this case does have a claim against decedent's estate as well as against the collateral. Nevertheless, the intention of the parties, if ascertainable, must control.

"In Wilson's Estate, 1950, 363 Pa. 546, 70 A.2d 354, 356, where the policy of life insurance, containing the right to assign and change beneficiary, was assigned to a bank as collateral for a loan, this Court found * * * that the amount of the debt secured by the collateral was a debt of the estate. This conclusion was reached on the basis of decedent's intent as expressed in the terms of the assignment to the bank. In the Wilson case they went on to say, as dicta, that, 'had the creditor bank used decedent-Setlore's insurance collateral to liquidate its loan, the designated insurance beneficiary could have enforced their claims against the estate of decedent under their right of subrogation.' In the light of our interpretation of decedent's intent in that case, this was a correct statement of law.

"This Court holds that * * * the proposition that the decedent's intent must control as to whether insurance beneficiaries get the net or gross proceeds under a policy which is assigned as collateral for a loan.

"The only evidence of the insured's intent would be his purpose as expressed at the time he designated the beneficiary and that intent was that the beneficiary should have the gross proceeds of the policy."

In Seitz v. Seitz, 238 Miss. 296, 118 So. 2d 351, the Supreme Court of Mississippi observed:

"Whether or not the beneficiary has a right to be subrogated to the pledgee's claim depends on the facts and circumstances of the particular case. Generally, in deciding whether the beneficiary of a life insurance policy, which insured has pledged as security for debts, has the right to be subrogated to the pledgee's claim against the insured's estate for the amount paid to the pledgee out of the proceeds of the policy or by the beneficiary, the determining factor is the intention of the insured. Annotation, 160 A. L.R. 1395; Farracy v. Perry, Tex.Civ. App.1928, 12 S.W.2d 651.

\*    \*    \*    \*    \*    \*

"If Seitz had wanted to block or limit his mother's benefit under the insurance policies, there were several available, effective methods. He had the power to change the beneficiaries, but he did not do this. He could have provided in the assignments that the beneficiary would have no right of subrogation or reimbursement, but he did not so provide. He could have made the insurance proceeds the primary source for payment for the debt in the event of his death, but he failed to do this. In brief, at the time of his death, the insurance policies were not primarily liable on the debt; the estate of decedent was. The right of the mother as beneficiary, formerly inchoate, became vested, subject to the secondary or collateral liability for the payment of the debt to the bank. Hence we must conclude that it was the intention of insured that his mother should be the beneficiary and entitled to all rights accruing to her, including subro-

gation, and particularly so when it appeared that Seitz was a man of considerable property interests, and, by necessary inference, of successful business acumen."

In Russell v. Owen, 203 N.C. 262, 165 S.E. 687, the insured borrowed $6,000 from a life insurance company and he and his wife executed to it a bond secured by a deed of trust on land and also a life insurance policy in which his wife was beneficiary and in which the right to change the beneficiary was reserved. The insured died and the assignee satisfied the debt from the proceeds of the policy. The North Carolina court held that since the insurance proceeds were the property of the wife and were used to pay the debt for which the insured's estate was primarily liable, she as a creditor was subrogated to the rights of the assignee. The court said:

"Her right to the proceeds of the policies, while contingent during the life of her husband upon a change by him of beneficiary, became vested at his death \* \* \* free from all the claims of the representatives of her husband or any of his creditors \* \* \* except the claims of the \* \* \* assignee of the policies. In Pearsall v. Bloodworth, 194 N.C. 628, 140 S.E. 303, it is said there is a well recognized distinction in law between the assignment of a policy and a change of beneficiary, certainly where the policy itself delegates the power to change the beneficiary at the option of the insured. In the instant case, the claim of The Equitable Life Assurance Society (assignee) to the proceeds of the policies was as assignee and not as beneficiary."

In Re Gallagher's Will, 57 N.M. 112, 255 P.2d 317, 37 A.L.R.2d 149, pronounces a similar rule. There the decedent borrowed some money from a bank, for which he executed a promissory note and which was collaterally secured by life insurance policies in which his wife was beneficiary. When the insured died, the bank collected the proceeds from one of the policies as-

signed, retained the amount due it, and paid the balance to the widow as beneficiary. Thereafter, the widow filed a claim against the estate for the amount of the indebtedness, contending that she was entitled to be subrogated to the claim of the bank for that amount. The Court said:

"The cases seem to be unanimous in holding the intention of the insured is the controlling factor.

"Certainly if the insured had wanted to block or limit his wife's benefit under the policy of insurance there were several effective methods open to him for the accomplishment of such purpose. He expressly reserved the right to change the beneficiary under the contract of insurance and also the terms of the assignment—yet he did not exercise this power to appoint another beneficiary. He could have provided in the terms of the assignment the beneficiary would have no right of subrogation or of reimbursement—but he did not so provide. He could have made the insurance proceeds the primary source for payment of the indebtedness in the event of his death. Neither was this done. But, in fact, as the matter stood at the time of his death, the insurance policy was not primarily liable on the debt—the estate of the decedent was. The right of the wife as beneficiary formerly inchoate, became vested, subject only to secondary or collateral liability for the payment of the claim to the bank. We can only conclude under these circumstances it was the intention of the insured that his wife should be the beneficiary of the policy and entitled to all rights accruing to her as such—including that of subrogation. Especially so when the decedent was characterized by his attorney, one of the executors of his estate, as a most astute manager of his financial affairs.

"The fact the bank proceeded first against the proceeds of one of the life insurance policies cannot prejudice the right of the wife to reimbursement and the action of the trial court in approving her claim of subrogation was correct."

For other cases of similar pronouncements see Chaplin v. Merchants Nat. Bank of Aurora, Illinois, D.C., 186 F.Supp. 273; Walzer v. Walzer, 3 N.Y.2d 8, 163 N.Y.S.2d 632, 143 N.E.2d 361, where it is said:

"It is clear that if a policy of life insurance is assigned as collateral for a debt without changing the beneficiary, then the primary obligation for the debt is that of the estate of the insured, and, in the event the creditor collects out of the policy, subrogation results and a right to collect from the estate descends to the beneficiary."

In the case of Tighe v. Walton, 233 Miss. 781, 103 So.2d 8, the Mississippi Supreme Court, by way of *dicta*, stated:

"Ordinarily, the mortgagor, who pays the mortgagee, after he has conveyed the property to a grantee, who assumes the mortgage, is entitled to be subrogated to the rights of the mortgagee. 83 C.J.S. Subrogation § 37, 647. In the same text, Section 44, at pp. 663–664, it is said: 'One whose property is applied by others to the satisfaction of a debt or encumbrance is subrogated to the rights of a creditor or encumbrancer; and subrogation may also be allowed where funds to which one is equitably entitled has been applied to the payment of debts of another, in which case the former is subrogated to the position of the latter. The right to subrogation is particularly appropriate where the circumstances under which the application is made results in unjust enrichment. Accordingly, the beneficiary of an insurance policy may be subrogated to the rights of a person paid from its proceeds.' "

In the instant case, the insured could have defeated the right of the beneficiary by: (1) He could have exercised the power of appointment and named another beneficiary; (2) he could have designated the assignee as beneficiary *pro tanto*; (3) he

could have made the proceeds of the policy a primary fund from which his debt was to be discharged; (4) he could have provided in the assignment that the beneficiary was to have no rights of subrogation or reimbursement. As stated by appellee, the insured did none of these, but merely assigned the policy as collateral security with the result that the insurance policy was not primarily liable for the debt.

We conclude that the adjudication of the trial court is free from the assigned and argued errors, and the decree should be and the same is affirmed.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and COLEMAN, JJ., concur.