459 So.2d 358 (1984)
In re THE ESTATE OF Charles E. MUNDELL, Jr., Deceased.
Mary Lenora Sanders, Appellant,
v.
Virginia Mundell Cowan, Appellee.
No. 83-1022.
District Court of Appeal of Florida, Fifth District.
November 1, 1984.
Rehearing Denied November 29, 1984.
David C. Holloman of Holloman & Lambert, Arcadia, for appellant.
J. Thomas Gurney and Bruce M. Wigle, III, of Gurney & Handley, P.A., Orlando, for appellee.
SHARP, Judge.
Mary Sanders appeals from the decision of the probate court, which held that Virginia Cowan was entitled to reimbursement from Charles Mundell's estate by *359 right of subrogation for the life insurance proceeds of a policy for which she was the designated beneficiary, which were used to pay a debt Mundell owed his first wife, Marjorie. We disagree that subrogation should be allowed in this case because the record clearly indicates that the insured decedent intended that the insurance proceeds be used to pay his debt owed to Marjorie. Therefore, the general rule allowing subrogation should not be applied.
Mundell died on July 15, 1978. His will left 65% of his residuary estate to his second wife, Virginia, and 35% to his daughter by a prior marriage, Mary. Should subrogation be allowed, Mary's share of the residuary would be substantially reduced.
The debt involved in this case arose when Mundell divorced his first wife, Marjorie. They agreed to split their marital assets essentially equally, and to compensate Marjorie for taking property unequal in value, Mundell executed a promissory note for $57,000.00. As security for the note, Mundell gave Marjorie a second mortgage on some real property, and pledged all the stock of his closely held business corporation.
In addition, the separation agreement and promissory note provided that Mundell would maintain in full force and effect a life insurance policy in the face amount (at least) of $50,000.00 on his life to secure payment of the debt. The policy was assigned to Marjorie. Later, Virginia was named beneficiary of the policy. When Mundell died, he still owed Marjorie more than the sums payable under the insurance policy. The insurance company paid Marjorie the full amount of the proceeds, $53,747.60.
We have found no controlling appellate decisions in Florida on the question of whether a beneficiary of a life insurance policy, which was pledged as collateral for an insured's debt, has the right to be subrogated to a creditor's claim against the estate of the insured, when the proceeds of the policy are used to pay the creditor's debt after the death of the insured. Ulery v. Asphalt Paving, Inc., 119 So.2d 432 (Fla. 1st DCA 1960), indicates that this state follows the majority view that generally allows the beneficiary of an insurance policy the right of subrogation against the estate. In re Gallagher's Will, 57 N.M. 112, 255 P.2d 317 (1953); In re Brock's Will, 208 N.Y.S.2d 772 (Surrogate's Ct. 1960); Chamberlin v. First Trust and Deposit Company, 172 Misc. 472, 15 N.Y.S.2d 168 (1939). However, Ulery stressed the fact that the insurance in that case had been used to pay a debt of a third party who was primarily liable, rather than the deceased insured.
The key issue, according to the case law, is whether the insured intended the beneficiary to have a right of subrogation. See Smith v. Coleman, 184 Va. 259, 35 S.E.2d 107 (1945); 16 Couch on Insurance 2d § 61:333 (Rev.ed. 1983); Annot., 91 A.L.R.2d 496 (1963). Rarely, however, is there an express indication one way or the other by the insured decedent on this question. In point of fact, he or she probably did not even think about it. The case law has developed, however, that absent an indication in the documentation of the loan or in the assignment opposing or inconsistent with the right of subrogation, courts favor the beneficiary by presuming the insured intended that subrogation be allowed.[1]
The case law which developed this presumption in the absence of a showing to the contrary is not current. Query whether in this age of using life insurance to liquidate and pay debts as a part of good estate planning practices, designed to prevent forced sales of estate assets, such a rule would have developed. The result of such a rule may force sales of non-liquid *360 assets in an estate  the precise reason for having obtained the life insurance in the first place. In fact, this probably would have resulted in this case. As Virginia noted in a memorandum in the record, the insured's estate has "serious cash-flow problems... ."
In any event, the general rule allowing subrogation is not applied if there is a positive or an express indication that subrogation would defeat the intent of the deceased insured, or if it would be inequitable. Cases deny subrogation where the insurance proceeds were designated as the primary source for repayment of the debt, or where the beneficiary's rights were made "subject to" the assignment,[2] or where the insurance assignment was the only collateral given for the debt.[3]
In this case, all three exceptions to the application of the general rule appear in the documentation. The insurance proceeds were expressly designated as the primary source for repayment in the event of death before the note was paid in full. Both the property settlement agreement entered into by the deceased and his first wife, Marjorie, and the promissory note carrying out its terms state that the provision dealing with maintaining a life insurance policy to secure payment of the note "is designed to fund the payment of this note in the event of my [the insured's] death. ..." The meaning of this provision is clear. The insurance was intended as the primary source of repayment if the insured died before the debt was repaid.
Further, unlike other cases where a creditor has access to more than one item of collateral and it elects to satisfy the debt out of insurance proceeds rather than other properties, in this case the language of the assignment gave the creditor (Marjorie) no alternative. The assignment provided that in the event the insured died the proceeds must be paid to her: "any sum or sums that may become payable under the said policy by reason of the insured's death shall be paid to the said Marjorie S. Mundell up to but not exceeding the balance due as principal and interest on the said note... ." (emphasis added). This language clearly made the rights of the beneficiary subject to the debt owed to Marjorie. Froman v. Froman Ex'r., 293 Ky. 1, 168 S.W.2d 361 (1943); Berger v. Berger, 264 Ky. 225, 94 S.W.2d 618 (1936).
The additional collateral in this case, a second mortgage on real estate, was to be released after $10,000.00 of the principal was repaid; and all the stock of the insured's corporation was to be released after $25,000.00 was repaid. Had the note been paid according to its terms, these items of collateral would have been released by the time the insured died, and the insurance would have been the sole collateral. Clearly it must be deemed to be the primary source of repayment. See 16 Couch, supra, at § 61:335.
Further, denial of the right of subrogation is not inequitable in this case. The insurance policy originally belonged to the deceased's first wife, Marjorie, and she was its beneficiary. She assigned it back to the deceased so he could use it to fulfill the requirements of their property settlement agreement. In dividing their marital assets, consisting of various businesses and properties, Marjorie came out some $57,500.00 short. The note given was meant to compensate her for receiving less than an equal share.
The decedent obviously meant to pay the note in full from income, over an approximately ten year period. He was concerned that the stock and second mortgage on real estate be released as soon as possible; and that there be no forced sale of those assets if he died before paying the note off, by application of the insurance proceeds. All of these arrangements had been made before the present claimant, the second wife, Virginia, entered the picture.
*361 In his will, the insured defendant provided that his second wife would take approximately 65%, and his daughter 35%, of his net estate. This division would be distorted by allowing subrogation against the estate, by drastically limiting the daughter's inheritance. This appears to be inequitable, as well as contrary to the insured's intent and plan for disposition of his assets. Subrogation should not be allowed if it works any injustice to the rights of others. Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933); Whyel v. Smith, 101 Fla. 971, 134 So. 552 (1931).
Accordingly, the judgment entered below is REVERSED.
DAUKSCH, J., concurs, without participation at oral argument.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
This case involves the right of subrogation of a life insurance beneficiary against the estate of the insured when a debt of the estate has been discharged with the insurance proceeds because the insurance policy was pledged as collateral for the debt.
THE ISSUE: A buys a policy of insurance on his life. B is the beneficiary. A pledges (assigns) the policy as collateral security for a debt A, as obligor, owes to C, as obligee. A dies. Rather than obtaining payment of the debt from A's estate, C makes demand on the life insurance company which uses some or all of the insurance proceeds to discharge the debt. Is B subrogated to C's claim against A's estate?
LAW-BACKGROUND: The earliest proceedings in common law courts were restitutionary in nature. Replevin, ejectment and assumpsit were conceived of as restoring to the plaintiff that to which he was entitled. Originally a form of action known as trespass on the case required the express undertaking of a duty or as it was called, "an assumpsit." Later law actions were allowed where there was no express promise or obligation but the promise could be inferred from the facts and circumstances. These situations are now described as creating "contracts implied in fact" and include cases where the defendant has received a consideration (goods or services) for which the law implies that he intended to pay and, therefore, the law implies a promise in fact to pay and creates causes of action to enforce the implied agreement to pay. These causes of action in general assumpsit came to be called "the common counts" and included quantum meruit. Later, in order to give an ex delicto remedy at law in addition to an ex contractu remedy, the common law action of general assumpsit was extended to cases beyond promises and obligations expressed or implied in fact and on to cases where the obligation was purely implied in, or imposed by, law. This latter class of cases are called "contracts implied in law" or "quasi contracts." As to both express obligations and obligations implied in fact, the actual or inferred intent of the obligor is relevant but as to obligations implied in law, the intent of the obligor, actual or inferred, is immaterial.
Causes of action at law on express obligations and on obligations implied in fact and those implied in law are all limited to the recovery of money. It was largely for this reason that the development of common law causes of action was paced and somewhat overlapped by a parallel development of proceedings in equity to provide more adequate remedies to redress situations in which one person was accountable to make restitution to another on the ground that otherwise he would be unjustly benefitted or the other would unjustly suffer loss. This evolution of equitable remedies also progressed from those relating to expressed equitable obligations (such as express trusts) to those implied in fact (resulting trusts) and finally to those purely implied by law (equity). Because the common law forms of action for restitution were adequate to secure the payment of money the development of equitable restitutionary remedies related lastly to situations in which a person was entitled (1) to obtain a specific thing or fund, or (2) to *362 have a lien established thereon, or (3) to be subrogated to the claim of another. These equitable remedies for restitution, sometimes, along with resulting trusts, collectively called remedies for "unjust enrichment," are (1) a decree establishing and enforcing a constructive trust of property; (2) a decree establishing and enforcing an equitable lien upon property; and (3) a decree that the plaintiff be subrogated to the position of another claimant against the defendant.
CONSTRUCTIVE TRUSTS: A constructive trust, like a quasi-contractual obligation at law, is imposed by equity not because of any express or inferred intention of the parties but as an equitable remedy because the person holding the legal title to property would be unjustly enriched if he were permitted to keep the property at the expense of the true or beneficial owner.
EQUITABLE LIENS: Where the owner of property would be unjustly enriched at the expense of another unless the latter is given a security interest against the property, equity will imply an equitable lien against the property.
SUBROGATION: Where property of a third person (the plaintiff) is used to discharge the debt or obligation owed by an obligor (the defendant) to an obligee under such circumstances that the obligor (the defendant) would be unjustly enriched by the retention of the benefit of the discharged debt or obligation at the expense of the third person (the plaintiff), the third person (the plaintiff) is entitled to be subrogated to the position of the obligee as against the obligor (the defendant). Where the plaintiff uses his own property to pay the debt of another (but does not do so officiously or with the intention of making a gift), and also where, for any reason, a third person, without the plaintiff's consent, uses the plaintiff's property to discharge the obligation of another, the plaintiff is entitled to reimbursement and is entitled to the equitable remedy of subrogation to obtain reimbursement from the obligor (the defendant).
Interesting parallels between the restitutionary actions at law and those provided by equitable remedies and between the equitable remedies themselves illuminate and explain the nature of each cause of action. The term "constructive trust" might be thought to suggest that it is based on a fiduciary relationship similar to an express trust but the two concepts are quite different and are not even divisions of the same fundamental concept. They are not species of the same genus. In equity a constructive trust differs from an express trust and a resulting trust in much the same way as, at law, a quasi-contractual obligation differs from an express obligation and from an obligation implied in fact. An express trust, like an express legal obligation, arises from a manifestation of an intention to create it. A resulting trust, like a legal contractual obligation implied in fact, arises where a transfer of property (including, tangible property, lien interests and evidences of indebtedness and other choses in action) is made under circumstances which raise an inference that, as a matter of fact, the person making the transfer or causing it did not intend the transferee to have its beneficial interest.
Just as a constructive trust establishes a plaintiff's equitable right to ownership and possession of property and an equitable lien establishes a plaintiff's equitable right to a lien against property, where the property of the plaintiff is used in discharging an obligation or lien he obtains restitution through subrogation. Where the plaintiff's property is used to purchase a claim against a third person, or a lien held by a third person, the purchaser of such claim or lien holds it upon a constructive trust for the plaintiff; but where the plaintiff's property is used in discharging such claim or lien, equity gives analogous relief by subrogating the plaintiff to the position which the obligee or lien holder occupied prior to the discharge.
Like a quasi-contractual obligation at law, a constructive trust, and an equitable lien, subrogation in equity does not arise because of any express or inferred intention of any person or party to create, or not *363 to create, the legal obligation and rights but it arises by operation of law from a particular factual circumstance and as an equitable remedy to prevent an unjust enrichment of one or the unjust deprivation of another.
In keeping with their historic development all causes of action in law and equity may be classified into three general categories according to the origin and nature of the obligation and rights:
CATEGORY 1: OBLIGATIONS INTENTIONALLY CREATED: (Causes of action where the legal obligations and rights are expressly intended to be created by the obligor and to bind him, his successors and assigns.) In these causes of action the specific subjective intent of the person creating the legal rights and duties is sought and is of controlling importance. This category includes causes of action to enforce all legal rights under formal written documents such as deeds, mortgages, express contracts, assignments, wills, express trusts, etc., as well as expressed oral agreements.
CATEGORY 2: OBLIGATIONS PRESUMPTIVELY INTENDED (IMPLIED IN FACT): (Causes of action that the law permits the fact finder to infer from the facts because in the usual course of human conduct the law presumes that just persons in similar circumstances would intend, by their actions, to create legal obligations and legal rights.) These causes of action involve a permissible factual inference as to an objective intent to be obligated but the actual and expressed intent of the obligor is considered relevant to that inquiry. In law, this category now includes causes of actions on all contracts implied in fact (causes of action on general assumpsit or "the common counts" which include quantum meruit); in equity, this category includes resulting trusts relating to the ownership of, and security interests against, property including choses in action.
CATEGORY 3: OBLIGATIONS IMPOSED BY LAW WITHOUT REGARD TO ACTUAL OR IMPLIED INTENTION: (Causes of action based on legal obligations and rights imposed strictly as a matter of law without regard to expressions of assent by either words or acts and completely independent of any express or implied intentions of the obligors or obligees or third persons to incur the obligation or create the right.) This category in law includes all ex delicto causes of action which include all intentional torts and negligence claims, as well as all (ex contractu) causes of action in quasi-contract. In equity it includes constructive trusts, equitable liens and subrogation.
From this short summary[1] of the development and purpose of causes of action it is clear that an equitable cause of action for subrogation is not dependent upon the intention of any person or party and that the intention of any person or party as to the possibility or effect of subrogation is not relevant or material to the existence of the legal (equitable) right of subrogation.
The following are classic illustrations of subrogation:
A owes a debt to B. C has no legal obligation to pay that debt. Without C's consent A, or D, a third party, uses C's money to pay and discharge the debt. C is subrogated to the rights that B had as obligee against A, as obligor.
A owes a secured debt to B. A owns Blackacre which is subject to a mortgage to secure A's debt to B. Without C's consent A, or a third person D, uses C's money to pay B and discharge the mortgage and the debt it secured. If C had no legal obligation to pay the debt, C is subrogated to the rights which B had as obligee and mortgagee.
In these illustrations it is clear that C's equitable right to subrogation exists independently of any intent on the part of A or B or C or D that C is to be subrogated to *364 the rights of B as obligee and mortgagee. Accordingly the law should be that the beneficiary of a life insurance policy which has been pledged as collateral for the debt of the insured or of a third person or anyone other than that of the beneficiary, has the right to be subrogated to the secured creditor's claim against the estate of the insured when the proceeds of the policy are used to pay the secured debt.
As the majority opinion indicates, general case law has made the right of subrogation in this situation dependent upon the intent of the insured as to the beneficiaries' right of subrogation; however, in this situation case law has developed in an erroneous direction. Such does not appear to be the law in the State of Florida. The most applicable Florida case is Ulery v. Asphalt Paving, Inc., 119 So.2d 432 (Fla. 1st DCA 1960). The facts in Ulery are as follows:
A buys a policy of insurance on his life. B1, B2 and B3 are the beneficiaries. A is the president and principal stockholder of X Corp. A pledges the policy as collateral security for a debt X Corp., as obligor, owes to C1 and C2. A dies. Rather than obtaining payment of the debt from X Corp., C1 and C2 make demands on the life insurance company which uses the insurance proceeds to discharge the debt. Are B1, B2 and B3 subrogated to the claims of C1 and C2 against X Corp.?
Ulery answers this question in the affirmative without regard to any mental intent, expressed or inferred or supposed, on the part of A, the insured, who pledged the policy or on the part of any other person or party. The primary question in Ulery was the interpretation of a statutory provision relating to insurance beneficiaries which statutory provision is not relevant to the question of subrogation. The reference in Ulery to the fact that the primary obligor on the debt secured by the insurance policy was a third person (X Corp.) and not the insured (A) was made in connection with distinguishing a prior case (the Bancroft case)[2] that related to the primary question of the precedence of a policy assignment to secure a debt and the statutory rights of the life insurance beneficiaries. The court in Ulery explained:
On the second appearance [of the Bancroft case], the Supreme Court held that the rights of the bank [the secured obligee] under the assignment were superior to those of the daughter [the life insurance beneficiary]. The same is true as between the rights of the appellant widow, children and executrix of the insured [B1, B2, and B3, the Ulery life insurance beneficiaries] and those of the assignees [the secured creditors C1 and C2 in Ulery] in the case presently on review, and the complaint so admits. This admission does not mitigate, however, against appellants' substantive right of subrogation, which subject was not involved in the Bancroft case. The sole issue there was whether the assignment to the bank took precedence over the rights of the daughter of the insured under the statute. The primary issue on this appeal is whether the complaint states a case entitling appellants [B1, B2, and B3, the Ulery life insurance beneficiaries] to a declaratory decree settling their rights in the premises. Collateral to that determination is the question of whether, assuming the allegations of the complaint are established, they [B1, B2, and B3, the Ulery life insurance beneficiaries] are entitled to be subrogated to the claims of the assignee-creditors [the secured creditors C1 and C2] against the appellee [X Corp.] to the extent that such claims are reduced by application of the proceeds of the respective policies of insurance assigned to secure those claims. Subrogation, a creation of equity, is founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another. Trueman Fertilizer Co. v. Allison, Fla., 81 So.2d 734. The right of subrogation has been sustained in almost every conceivable type *365 of transaction where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience the other ought to pay. (emphasis supplied) Those claiming interests by, through or under a deceased surety or guarantor, as heirs or otherwise, assume the position of the decedent in respect to the right of subrogation.
* * * * * *
Thus in the instant suit the appellants [B1, B2 and B3, the Ulery life insurance beneficiaries], who seek a decree declaring their rights in the premises, are entitled, in the event their rights are determined in accordance with their contentions, to enforce their claim of subrogation against the party primarily liable [X corp.]... .
OTHER CONSIDERATIONS: The scenario giving rise to the legal question in this case always includes the following cast of interested parties:
A's estate, which is the primary obligor on a debt owed by A at his death to C as creditor which debt is secured by a pledge of life insurance on A's life.
B is the beneficiary of the pledged life insurance policy.
C is A's creditor and the owner of the debt secured by the insurance policy. XX are the heirs, devisees or other beneficiaries of A's estate.
The ultimate question is always whether the debt due C is to be paid at the expense of B the policy beneficiary or XX the beneficiaries of A's estate. If B and XX are the same parties with the same percent interest there is no problem.
Two collateral points of law are always relevant to resolution of the question of whether B is to be subrogated to the rights of C against A's estate.
(1) A's estate is the primary obligor on the secured debt and in the absence of an agreement to the contrary C, the secured creditor, always has an option to waive the right to look to the pledged policy proceeds and to proceed personally against A's estate, for payment of the debt secured. Thus, as a very practical matter, it is always the creditor C, who makes the decision to look for payment of the debt to insurance proceeds owned by B, the policy beneficiary, rather than to the primary obligor which is A's estate. If C waives his security and looks to A's estate the question in this case never arises. It is only when C elects to look to the insurance proceeds for payment that the question as to whether B is to be subrogated to the rights of C against A's estate is presented.
(2) Whether or not the insured during his life had the right to change the beneficiary, the rights of the named beneficiary vest at the instant of the insurer's death and the beneficiary becomes the owner of the policy proceeds. The policy proceeds belong to B, the policy beneficiary, although those proceeds are subject to the priority rights of a secured creditor, to whom the policy proceeds are pledged as collateral.
When the secured creditor has elected to obtain payment from the insurance proceeds rather than from A's estate, in deciding whether the beneficiary of the pledged policy is subrogated to the creditor's claim against the insured's estate, as the majority opinion asserts, most cases have held that the determining factor is the intent of the deceased insured.[3] For the reasons set forth above it is suggested, however, that this is not the best approach because the legal question can, and should, be decided objectively on legal principle rather than from case to case on the unexpressed intention of a deceased person (who probably never thought about the problem) as that interest is subjectively perceived by a court from circumstances having no real inferential value. This "intent of the insured" approach to this subrogation problem permits any result desired by the court, favoring the policy beneficiary or the estate beneficiary, at will. This permits a result oriented decision which may be emotionally *366 rewarding but this advantage is far offset by the need for uniformity under a rule of law.
In this case B, the policy beneficiary, is the second wife of A, the insured, while A's daughter by his first wife is a thirty-five percent beneficiary of A's estate. C, the secured creditor, is A's ex-wife and also the mother of the thirty-five percent beneficiary in A's estate. Thus, it is easy to understand why C the secured creditor elected to have her $57,000 debt partially paid from the $50,000 insurance proceeds otherwise owned by the second wife B, as beneficiary under the pledged policy, rather than to collect the indebtedness from the primary obligor, A's estate, which would have cost C's daughter about thirty-five percent of $50,000 or about $17,500. The result of C's decision will be permitted to control B's rights as policy beneficiary unless subrogation in this case is permitted either as a matter of law or on the basis of a factual finding as to A's intent. To deny subrogation on the basis of some finding as to A's supposed intent may be viscerally satisfying in this case but a good rule of law should be applied equally in every similar case so that if, in the next case the only difference is that A's daughter is the beneficiary of the pledged policy and the second wife is the sole beneficiary of A's estate, the result under the law will be the same.
ANOTHER FACTOR: Even the cases that purport to make a decision as to subrogation turn on the intent of the insured make an exception in a case, such as this one, where the debt is secured by a lien or claim against other property in addition to the pledged policy. Under such circumstances, the policy beneficiary does not merely seek subrogation to the right, as a general creditor against the general assets of the insured's estate, but also seeks subrogation to the position of a secured creditor having the right to foreclose against other specific property of A's estate securing the debt. In this situation the pledge of the other property is taken as sufficient evidence that the insured intended the property to be used as a primary security for the debt and to permit subrogation by the policy beneficiary. The following are the relevant cases:
In Ex parte Boddie, 200 S.C. 379, 21 S.E.2d 4 (1942), reviewed by 91 ALR.2d 496, 504 (1963), the insured obtained a loan from an insurance company evidenced by his note and secured by a mortgage on real estate owned by him. The mortgage contained the requirement that the mortgagor procure a life policy and assign it to the mortgagee as additional collateral, which was done by the insured; and the named beneficiary of the policy was the insured's wife. After the death of the insured the question arose whether the mortgagee-insurer was required to apply the proceeds of the life policy to the balance due on the mortgage, or whether it could instead foreclose the mortgage to use the proceeds of the foreclosure sale as payment upon the debt. Declaring that it was the intention of the parties that the real estate should be the primary security for the indebtedness and the insurance proceeds the secondary security, the court held that the mortgaged premises should be sold in foreclosure and the proceeds of such sale applied to the indebtedness due to the insurer, and that the proceeds of the policy should be paid over to the beneficiary.
The insured, in Smith v. Wells, 72 Ind. App. 29, 122 N.E. 334, 123 N.E. 644 (1919), reviewed by 91 A.L.R.2d 496, 505 (1963), assigned a contract of insurance on his life as security for his debt, in addition to giving a note and mortgage on real estate. At the time of such assignment he entered into an agreement providing that in the event his debt should be paid out of the insurance proceeds, the beneficiaries of the insurance should have the right to be subrogated to the creditor's interest in the mortgaged property. The indebtedness of the assured having been paid out of the insurance, it was held that a beneficiary having a one-third interest in the insurance contract was entitled to a decree of foreclosure against the mortgaged real estate, *367 and to have distributed to him a one-third amount of the proceeds of sale.
The children of the insured, beneficiaries of a policy on his life assigned by him to a bank to secure a loan, were held in Barbin v. Moore, 85 N.H. 362, 159 A 409, 83 A.L.R. 62 (1932), reviewed by 91 A.L.R.2d 496, 505 (1963), to have the right to be subrogated against moneys in the hands of the administrator of the insured's estate derived from the sale of real estate mortgaged to secure the debt, to the amount of the policies paid in satisfaction of deceased's indebtedness, the court stating that if the insured had wished the proceeds of the policies to be first applied in satisfaction of the debt he could have done so by mere direction in the assignment, or he could have made the bank beneficiary of the insurance to the extent of its claim.

Russell v. Owen, 203 N.C. 262, 165 S.E. 687 (1932), reviewed by 91 A.L.R.2d 496, 505 (1963), was a proceeding by the administrator of the decedent's estate to sell certain lands owned by the deceased to provide assets for the payment of his debts. It appeared that the decedent had secured two loans from an insurance company, and in addition to executing two trust deeds on real estate to secure the debts, assigned as collateral two policies on his life issued by the insurance company aforesaid. On the demise of the deceased, the company applied the amount owing by it on the policies to the debts in question, canceled the notes evidencing the indebtedness, and paid the overplus due on the policies to the beneficiary thereunder, decedent's wife. She filed a petition asking that she either be subrogated to the rights of the insurance company under the trust deeds to the amount of the debts deducted by it from the policies, or that she be declared an unsecured creditor of her husband's estate for such sum. In reversing the action of the lower court in denying her any relief, the court said that the proceeds of the policies were, subject to the rights of the insurance company, her property, "free from all the claims of the representatives of her husband or any of his creditors," and that she "became a creditor of his estate," and was "entitled to be subrogated to all the rights of the [company] under the deeds of trust."
Where husband insured under life policy on which former wife was named beneficiary assigned the policy to a mortgage creditor who was paid policy proceeds on husband's death, wife was subrogated to mortgagee's rights under the mortgage. Rountree v. Frazee, 282 Ala. 142, 209 So.2d 424 (1968), reviewed by 16 Couch on Insurance 2d § 61:335 n. 7 (Rev.Ed. 1983).
Where mortgage recited that it was given in order to secure the payment of the debt and merely provided that mortgagee may require the mortgagor to carry life insurance in a sum sufficient to pay sums secured by the mortgage, mortgage was considered primary security by the parties, and where mortgagor had procured a life policy and assigned it to the mortgagee as collateral security for the debt, after payment of policy proceeds to mortgagee the named beneficiary in the policy was entitled to be subrogated to the mortgagee's claim against the insured's estate for the amount paid under the policy to the mortgagee. Murphy v. Murphy, 259 S.C. 147, 190 S.E.2d 735 (1972), reviewed by 16 Couch on Insurance 2d § 61:335 n. 7 (Rev.Ed. 1983).
CONCLUSION: Subrogation is a creature of equity founded on the proposition of doing justice without regard to form and was designed to afford relief where the money of one is used to pay a legal obligation which ought to have been met, either wholly or partially by a primary obligor (Trueman Fertilizer Co. v. Allison, 81 So.2d 734 (Fla. 1955)) and is sustained in every circumstance where the money of the party invoking it has been used to pay a debt for which another is primarily liable and which in equity and good conscience the other ought to pay; therefore, when insurance proceeds are used to pay an obligation for which the insured estate is primarily *368 obligated to pay, the beneficiary of the pledged insurance policy should be subrogated as a matter of law to the secured creditor's claim against the insured's estate.
NOTES
[1] See Chaplin v. Merchants Nat'l Bank of Aurora, Ill., 186 F. Supp. 273 (N.D. Ill. 1959); Mutual Life Ins. Co. of New York v. Illinois Nat'l Bank of Springfield, Ill., 34 F. Supp. 206 (E.D. Mich. 1940); Rountree v. Frazee, 282 Ala. 142, 209 So.2d 424 (1968); Murnane v. Murnane, 447 S.W.2d 590 (Ky. 1969); Seitz v. Seitz, 238 Miss. 296, 118 So.2d 351 (1960); Walzer v. Walzer, 3 N.Y.2d 8, 163 N.Y.S.2d 632, 143 N.E.2d 361 (1957); Ex parte Boddie, 200 S.C. 379, 21 S.E.2d 4 (1942).
[2] But see Walzer v. Walzer, 3 N.Y.2d 8, 164 N.Y.S.2d 632, 143 N.E.2d 361 (1957).
[3] See Kash's Ex'r v. Kash, 260 Ky. 508, 86 S.W.2d 273 (1935); 16 Couch on Insurance 2d § 61:334 (Rev. ed. 1983).
[1] For further detail see C. Crandall, A Treatise on the Practice in Action at Law (1928), Chapters 7 and 9, and Introductory Notes and Matters to the American Laws Institute's Restatement of the Law of Restitution (1937); 1 Williston on Contracts §§ 3-3A (3d Ed. 1957); 1 Corbin on Contracts §§ 18-19 (1963 Ed. and Supp. 1980).
[2] Bancroft v. West, 128 Fla. 193, 174 So. 327 (1937).
[3] See 16 Couch on Insurance 2d § 61:333 at 349 (Rev.ed. 1983); Annot., "Right of Beneficiary Where Policy is Pledged as Collateral", 91 A.L.R.2d 496 (1963).