SHARP, Judge.
Mary Sanders appeals from the decision of the probate court, which held that Virginia Cowan was entitled to reimbursement from Charles Mundell’s estate by *359 right of subrogation for the life insurance proceeds of a policy for which she was the designated beneficiary, which were used to pay a debt Mundell owed his first wife, Marjorie. We disagree that subrogation should be allowed in this case because the record clearly indicates that the insured decedent intended that the insurance proceeds be used to pay his debt owed to Marjorie. Therefore, the general rule allowing subrogation should not be applied.
Mundell died on July 15, 1978. His will left 65% of his residuary estate to his second wife, Virginia, and 85% to his daughter by a prior marriage, Mary. Should subro-gation be allowed, Mary’s share of the residuary would be substantially reduced.
The debt involved in this case arose when Mundell divorced his first wife, Marjorie. They agreed to split their marital assets essentially equally, and to compensate Marjorie for taking property unequal in value, Mundell executed a promissory note for $57,000.00. As security for the note, Mun-dell gave Marjorie a second mortgage on some real property, and pledged all the stock of his closely held business corporation.
In addition, the separation agreement and promissory note provided that Mundell would maintain in full force and effect a life insurance policy in the face amount (at least) of $50,000.00 on his life to secure payment of the debt. The policy was assigned to Marjorie. Later, Virginia was named beneficiary of the policy. When Mundell died, he still owed Marjorie more than the sums payable under the insurance policy. The insurance company paid Marjorie the full amount of the proceeds, $53,-747.60.
We have found no controlling appellate decisions in Florida on the question of whether a beneficiary • of a life insurance policy, which was pledged as collateral for an insured’s debt, has the right to be subro-gated to a creditor’s claim against the estate of the insured, when the proceeds of the policy are used to pay the creditor’s debt after the death of the insured. Ulery v. Asphalt Paving, Inc., 119 So.2d 432 (Fla. 1st DCA 1960), indicates that this state follows the majority view that generally allows the beneficiary of an insurance policy the right of subrogation against the estate. In re Gallagher’s Will, 57 N.M. 112, 255 P.2d 317 (1953); In re Brock’s Will, 208 N.Y.S.2d 772 (Surrogate’s Ct. 1960); Chamberlin v. First Trust and Deposit Company, 172 Misc. 472, 15 N.Y.S.2d 168 (1939). However, Ulery stressed the fact that the insurance in that case had been used to pay a debt of a third party who was primarily liable, rather than the deceased insured.
The key issue, according to the case law, is whether the insured intended the beneficiary to have a right of subrogation. See Smith v. Coleman, 184 Va. 259, 35 S.E.2d 107 (1945); 16 Couch on Insurance 2d § 61:333 (Rev.ed.1983); Annot., 91 A.L. R.2d 496 (1963). Rarely, however, is there an express indication one way or the other by the insured decedent on this question. In point of fact, he or she probably did not even think about it. The case law has developed, however, that absent an indication in the documentation of the loan or in the assignment opposing or inconsistent with the right of subrogation, courts favor the beneficiary by presuming the insured intended that subrogation be allowed.[1]
The case law which developed this presumption in the absence of a showing to the contrary is not current. Query whether in this age of using life insurance to liquidate and pay debts as a part of good estate planning practices, designed to prevent forced sales of estate assets, such a rule would have developed. The result of such a rule may force sales of non-liquid *360 assets in an estate — the precise reason for having obtained the life insurance in the first place. In fact, this probably would have resulted in this case. As Virginia noted in a memorandum in the record, the insured’s estate has “serious cash-flow problems.... ”
In any event, the general rule allowing subrogation is not applied if there is a positive or an express indication that subro-gation would defeat the intent of the deceased insured, or if it would be inequitable. Cases deny subrogation where the insurance proceeds were designated as the primary source for repayment of the debt, or where the beneficiary’s rights were made “subject to” the assignment,[2] or where the insurance assignment was the only collateral given for the debt.[3]
In this case, all three exceptions to the application of the general rule appear in the documentation. The insurance proceeds were expressly designated as the primary source for repayment in the event of death before, the note was paid in full. Both the property settlement agreement entered into by the deceased and his first wife, Marjorie, and the promissory note carrying out its terms state that the provision dealing with maintaining a life insurance policy to secure payment of the note “is designed to fund the payment of this note in the event of my [the insured’s] death....” The meaning of this provision is clear. The insurance was intended as the primary source of repayment if the insured died before the debt was repaid.
Further, unlike other cases where a creditor has access to more than one item of collateral and it elects to satisfy the debt out of insurance proceeds rather than other properties, in this case the language of the assignment gave the creditor (Marjorie) no alternative. The assignment provided that in the event the insured died the proceeds must be paid to her: “any sum or sums that may become payable under the said policy by reason of the insured’s death shall be paid to the said Marjorie S. Mun-dell up to but not exceeding the balance due as principal and interest on the said note_” (emphasis added). This language clearly made the rights of the beneficiary subject to the debt owed to Marjorie. Froman v. Froman Ex’r., 293 Ky. 1, 168 S.W.2d 361 (1943); Berger v. Berger, 264 Ky. 225, 94 S.W.2d 618 (1936).
The additional collateral in this case, a second mortgage on real estate, was to be released after $10,000.00 of the principal was repaid; and all the stock of the insured’s corporation was to be released after $25,000.00 was repaid. Had the note been paid according to its terms, these items of collateral would have been released by the time the insured died, and the insurance would have been the sole collateral. Clearly it must be deemed to be the primary source of repayment. See 16 Couch, supra, at § 61:335.
Further, denial of the right of subrogation is not inequitable in this case. The insurance policy originally belonged to the deceased’s first wife, Marjorie, and she was its beneficiary. She assigned it back to the deceased so he could use it to fulfill the requirements of their property settlement agreement. In dividing their marital assets, consisting of various businesses and properties, Marjorie came out some $57,-500.00 short. The note given was meant to compensate her for receiving less than an equal share.
The decedent obviously meant to pay the note in full from income, over an approximately ten year period. He was concerned that the stock and second mortgage on real estate be released as soon as possible; and that there be no forced sale of those assets if he died before paying the note off, by application of the insurance proceeds. All of these arrangements had been made before the present claimant, the second wife, Virginia, entered the picture.
*361 In his will, the insured defendant provided that his second wife would take approximately 65%, and his daughter 35%, of his net estate. This division would be distorted by allowing subrogation against the estate, by drastically limiting the daughter’s inheritance. This appears to be inequitable, as well as contrary to the insured’s intent and plan for disposition of his assets. Subrogation should not be allowed if it works any injustice to the rights of others. Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933); Whyel v. Smith, 101 Fla. 971, 134 So. 552 (1931).
Accordingly, the judgment entered below is REVERSED.
DAUKSCH, J., concurs, without participation at oral argument.
COWART, J., dissents with opinion.

. See Chaplin v. Merchants Nat’l Bank of Aurora, III., 186 F.Supp. 273 (N.D. 111.1959); Mutual Life Ins. Co. of New York v. Illinois Nat’l Bank of Springfield, III., 34 F.Supp. 206 (E.D. Mich. 1940); Rountree v. Frazee, 282 Ala. 142, 209 So.2d 424 (1968); Murnane v. Murnane, 447 S.W.2d 590 (Ky.1969); Seitz v. Seitz, 238 Miss. 296, 118 So.2d 351 (1960); Walzer v. Walter, 3 N.Y.2d 8, 163 N.Y.S.2d 632, 143 N.E.2d 361 (1957); Ex parte Boddie, 200 S.C. 379, 21 S.E.2d 4 (1942).

. But see Walzer v. Walzer, 3 N.Y.2d 8, 164 N.Y.S.2d 632, 143 N.E.2d 361 (1957).

. See Kash’s Ex’r v. Kash, 260 Ky. 508, 86 S.W.2d 273 (1935); 16 Couch on Insurance 2d § 61:334 (Rev. ed. 1983).