## Seitz, Admrx. *v.* Seitz.

No. 41385          March 7, 1960          118 So. 2d 351

*Martin & Brown,* Macon; *Ethridge, Minniece & Bour-deaux,* Meridian, for appellant.

*Walker & Thompson,* Starkville, for appellee.

298

APPELLANT IN REPLY.

ETHRIDGE, J.

This case involves the question of whether the beneficiary of life insurance policies, which the insured pledged to a bank as collateral security for a debt, has the right to pay the pledge of insured after his death, and to be subrogated to the pledgee's claim against the insured's estate for the amount paid to pledgee by the beneficiary. We hold that, under the circumstances presented, the beneficiary has the right of subrogation, and, accordingly, affirm the decree of the Chancery Court of Lowndes County.

Wiley Nash Seitz died intestate in Lowndes County, Mississippi, in November 1957. He had no children, and his sole heir was his wife, the appellant Mrs. Gladys Cade Seitz, administratrix of his estate, whom he married in 1950. He was a man of considerable means, who had substantial farming and cattle interests in Lowndes and Oktibbeha Counties.

On February 6, 1951, he borrowed from the Security State Bank at Starkville $6,000, evidenced by a promissory note. He owned several life insurance policies upon his life, in which his mother, the appellee Mrs. W. H. N. Seitz, was the beneficiary. He had the right to change beneficiaries, but did not do so. He assigned these life insurance policies to the bank as collateral security for this note, and "for any and all liabilities" to the assignee bank, which might exist then or later. The form of assignment of all of the policies except two was substantially the same. The latter two are short, general forms assigning his interest in the policies, as collateral security.

The basic assignment form used as to the majority of the policies is in more detail. It conveys to the assignee

bank the sole right to collect from the insurer the net proceeds of the policy when it becomes a claim by death, and to surrender it and receive its surrender value. Assignor retains the right to designate and change the beneficiary. The instrument further provides:

". . . any balance of sum received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the policy had this assignment not been executed; . . . . . . . The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

"1. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security."

At the request of insured, the beneficiary, appellee, the insured's mother, also executed the assignments. She did not sign the promissory notes.

The original note of 1951 was due one year from date and was renewed by Seitz for successive years, the final renewal date being on January 31, 1957. J. T. Steele, president of the bank, stated that, when the original note was made in 1951, Seitz told him he intended to pay the note that fall out of his cotton crop, and that he made the same statement on several other occasions with reference to subsequent renewals. Steele testified the bank

did not accept the assignments of the insurance policies in settlement of the indebtedness of Seitz. Seitz told him on several occasions in subsequent years that he wanted to pay the note when he sold his cotton. When he renewed it in January 1957, he asked Steele to renew it until that fall, when he thought he would be able to pay it from the proceeds of his cotton crop.

W. M. Seitz, brother of deceased, said Setiz asked him to see if he could sell a particular farm of his, stating he needed to sell it because he owed the bank some money and wanted to get clear of debt to them.

After Seitz's death the bank made proof of death to the several insurance companies on the policies assigned to it as collateral security, and received from these companies checks payable to the Security State Bank for the principal amounts of these life insurance policies, the aggregate of which was considerably in excess of the bank's loan. Appellee, the beneficiary in them, asked the bank for the privilege of paying off the loan. That request was granted, and she gave the bank her check for the $6,000 loan plus accrued interest. The bank endorsed the insurers' checks to appellee and assigned to her without recourse Seitz's note. Steele testified it was not the general policy of the bank to collect the loan value of collateral insurance policies if the loan could be paid off otherwise.

Subsequently appellee probated a claim against the estate of Wiley Nash Seitz for $6,214, being the amount of the deceased's note and accrued interest which appellee had paid the bank in settlement of his debt to the bank. Appellee's claim recited these facts and asserted she was entitled to be reimbursed out of the estate for the amount she paid the bank to amortize the deceased's note. After a hearing the chancery court rendered a decree adjudicating that appellee's claim should be allowed for $6,214 plus interest to date of the decree, less credit

of $298.68 for unearned premiums collected by appellee. This appeal is from that decree.

The question is whether the beneficiary, appellee, has a right of subrogation to the right of the creditor, the bank, against Seitz's estate. The governing principles are well stated in 29 Am. Jur., Insurance, Sec. 681: "Whether the beneficiary of a life insurance policy which the insured pledged as security for debts has the right to be subrogated to the pledgee's claim against the insured's estate for the amount paid to the pledgee out of the proceeds of the policy depends primarily upon the intention of the insured. Applying this principle, it has been held that the beneficiary is entitled to subrogation to the claim of a creditor against the estate of the insured, where the creditor, instead of proceeding against the estate, obtains satisfaction from the proceeds of the policy, which had been assigned to him as security for payment of the debt, and nothing appears in the assignment or the will to indicate an intention that the insurance proceeds should be the primary source of payment of the debt. Similarly, it has been held that where an insured who had the right to change the beneficiary of a life insurance policy assigned it with other property as collateral security for a bank loan, and upon his death the bank retained part of the proceeds of the policy in payment of the loan and returned the other collateral to the estate of the insured, the beneficiary of the policy became subrogated to the rights of the bank against the estate of the insured. . .

"On the other hand, where it appears that it was the insured's intention that the beneficiary should not be entitled to be subrogated to the claim of the assignee, such right will be denied to him."

See also Anno., 83 A. L. R. 77, 82-84 (1933); Anno., 160 A. L. R. 1389, 1395-1399 (1946); Re Gallagher's will, 57 N. N. 112, 255 P. 2d 317, 37 A. L. R. 2d 149, 165-167 (1953); 2 Appleman, Insurance Law and Practice (1941),

Sec. 1316 (Supp.); 83 C. J. S., Subrogation, Sec. 44, fn. 89.

██ ██ Whether or not the beneficiary has a right to be subrogated to the pledgee's claim depends on the facts and circumstances of the particular case. Generally, in deciding whether the beneficiary of a life insurance policy, which insured has pledged as security for debts, has the rights to be subrogated to the pledgee's claim against the insured's estate for the amount paid to the pledgee out of the proceeds of the policy or by the beneficiary, the determining factor is the intention of the insured. Anno., 160 A. L. R. 1395; Farracy v. Perry, 12 S. W. 2d 651 (Tex. Civ. App. 1928).

The assignments to the bank were made as collateral security for the loan. The facts outlined above show that the insured, assignor, did not intend to make the value of the policy the primary source of payment of his debt, but, on the contrary, he intended the policies should serve as collateral security for his personal obligation, and that of his estate, which would be the primary source of payment of the debt. Steele's testimony makes that clear. See Tighe v. Walton, 233 Miss. 781, 103 So. 2d 8(1958). The effect of the decree of the chancery court is to conclude that was his intent, it is amply supported by the evidence, and in accord with the great weight of authority.

If Seitz had wanted to block or limit his mother's benefits under the insurance policies, there were several available, effective methods. He had the power to change the beneficiaries, but he did not do so. He could have provided in the assignments that the beneficiary would have no right of subrogation or reimbursement, but he did not so provide. He could have made the insurance proceeds the primary source for payment of the debt in the event of his death, but he failed to do this. In brief, at the time of his death the insurance policies were not primarily liable on the debt; the estate of the decedent

was. The right of the mother as beneficiary, formerly inchoate, became vested, subject to the secondary or collateral liability for the payment of the debt to the bank. Hence we must conclude that it was the intention of insured that his mother should be the beneficiary and entitled to all rights accruing to her, including subrogation, and particularly so when it appears that Seitz was a man of considerable property interests, and, by necessary inference, of substantial business acumen.

Affirmed.

*McGehee, C. J.,* and *Kyle, Holmes* and *Gillespie, JJ.,* concur.