MADDOX, Justice
(Concurring, in part; dissenting, in part).
Because I believe that the former husband of the claimant maintained the policy of insurance on his life with the claimant as the beneficiary only because the trial court had previously enjoined him to do so “[t]o secure the child support payments ordered [in the divorce decree],” I would affirm the judgment of the Circuit Court of Covington County denying ex-wife Susie Copeland’s claims against the estate of Lewis Copeland for back child support and for subro-gation rights against the estate for life insurance proceeds; therefore, I concur as to Part II of the opinion, but dissent as to Part I.
When the divorce decree was modified in October 1980, the trial judge who heard this case decreed, in pertinent part:
“(4) It is further ORDERED, ADJUDGED and DECREED that the defendant, Lewis W. Copeland shall pay to the Clerk of this Court to be forwarded to the Plaintiff, Susie B. Copeland McLean, for the support of Drexel Copeland and Ryan Copeland, minor children of the parties, the sum of $35.00 per week per child said payments to continue until the graduation from high school or the nineteenth (19) birthday whichever event first occurs, the first of said payments to be due Friday, October 10, 1980, and succeeding payments due on each Friday thereafter; and shall pay one-half (½) the costs of all medical, dental, eyeglass and surgical expenses necessarily incurred by or on behalf of said minor children not otherwise compensated for by insurance.
“(5) To secure the child support payments ordered herein the defendant, Lewis W. Copeland, is hereby restrained and enjoined from changing the beneficiary on any life insurance policies now in force on his life and is directed to keep his present policies in force and effect, this injunction to continue until the support obligations due under this decree are fully discharged.” (Emphasis added.)
Susie’s claims are based on the language set forth in the 1980 decree, which ordered Lewis to maintain life insurance policies with her as the beneficiary “until the support obligations due under this [divorce] decree are fully discharged.” This language clearly shows that the life insurance was to be maintained to secure child support payments, she says.
*1235 In Rountree v. Frazee, 282 Ala. 142, 209 So.2d 424 (1968), the case she relies upon, the named beneficiary of the life insurance policy was Lucian Rountree, a former spouse of the insured. The insured, prior to his death, had also assigned the policy as collateral for a loan. Upon the insured’s death, the entire proceeds of the policy were paid to the assignee. The named beneficiary brought suit against the assign-ee and the trial court held that the named beneficiary was to be subrogated to the right of the assignee. The assignee appealed, and this Court affirmed the judgment.
In so holding, this Court provided a summary of a case decided by the Supreme Court of Pennsylvania:
“ ‘[The Pennsylvania court held] that ... the decedent’s intent must control as to whether insurance beneficiaries get the net or gross proceeds under a policy which is assigned as collateral for a loan.’ ”
282 Ala. at 148, 209 So.2d at 428. This Court approved the reasoning of that Pennsylvania case. Likewise, this Court in Rountree, quoted with approval from Seitz v. Seitz, 238 Miss. 296, 118 So.2d 351 (1960):
“ ‘Whether or not the beneficiary has a right to be subrogated to the pledgee’s claim depends on the facts and circumstances of the particular case. Generally, in deciding whether the beneficiary of a life insurance policy, which insured has pledged as security for debts, has the right to be subrogated to the pledgee’s claim against the insured’s estate for the amount paid to the pledgee out of the proceeds of the policy or by the beneficiary, the determining factor is the intention of the insured. Annotation, 160 A.L. R. 1395; Farracy v. Perry, Tex.Civ.App. 1928, 12 S.W.2d 651.’ ”
282 Ala. at 149, 209 So.2d at 429.
It is clear that in Rountree, supra, this Court determined that the intent of the insured controls the question of whether the named beneficiaries or the assignees of a life insurance policy receive the proceeds of the policy. In Rountree the Court determined that it was the insured’s intent to provide for the named beneficiary. The lower court reached the opposite result in this case, and I am of the opinion the evidence supports this determination.
There is evidence that the insured in this case maintained the policy with Susie as the named beneficiary only to comply with the trial court’s order. The Honorable W.H. Baldwin issued the order modifying the divorce judgment, and he was the judge who was called upon to interpret this same order. From the evidence presented, the trial court could have concluded that it was the insured’s intent that Commercial Bank receive the proceeds from the life insurance policies necessary to pay off his indebtedness to it.
As I have previously stated, Lewis was ordered by the trial court to maintain the life insurance policies he had in effect at the time of the modification of the judgment, with Susie Copeland as the named beneficiary, to insure that child support was paid. There was no evidence in the record to show that Lewis intended for Susie to receive the entire proceeds from the policy. In fact, the record reveals that the assignments to Commercial Bank were made prior to the date of the trial court’s order and clearly appeared on the face of the policies at the time this order was entered. Also, Susie had signed one of these assignments as owner of the policy. When Lewis renewed his loans with Commercial Bank, the same assignments remained in effect. After Commercial Bank received the proceeds necessary to cover Lewis’s indebtedness, Susie received over $15,000 from the remaining proceeds.
I realize, of course, that at common law child support obligations terminate at death in the absence of an express provision having the effect of requiring continued payment after death, which can be found in a judgment of divorce, as here. See Pittman v. Pittman, 419 So.2d 1376 (Ala.1982). Although the decree of the court in this case did require the continued payment of child support, the record shows that the amount received by Susie was in excess of the amount of any child support obligations that were outstanding ($2,172.27) *1236 and of any support potentially due, because of the ages of the children and the amount required to be paid under the terms of the decree.[1]
Because Susie received over $15,000 as the named beneficiary of the life insurance policy, which was to secure the payment of child support, I do not believe she was entitled to a claim against the estate for back child support in the amount of $2,172.27, or to be subrogated to recover the insurance proceeds.
For the above stated reasons, I would affirm the judgment of the trial court; therefore, I concur as to Part II, but must respectfully dissent as to part I.
TORBERT, C.J., and ALMON and STEAGALL, JJ., concur.

. The record reveals that at the time of Lewis Copeland’s death, his oldest child, Ryan Copeland, had reached his majority. The youngest child, Drexel Copeland, will reach his majority on April 27, 1988, at which time Lewis Copeland's child support obligations would have ceased. After examining the record, I believe that the amount of child support owed until Drexel Copeland reached his majority would have been $5,120.