STUART, Justice.
Dolores Aderholt (“Dolores”), as administrator of the estate of her deceased son Bobby Wayne Aderholt (“Bobby”), appeals the summary judgment entered by the Walker Circuit Court in favor of Sandra R. Aderholt McDonald (“Sandra”), Bobby’s ex-wife, holding that Sandra was entitled to the proceeds of a $150,000 life-insurance policy Bobby held at the time of his December 2014 death. We affirm.
*649 I.
The relevant facts in this case are undisputed. On June 17, 1993, Alfa Life Insurance Corporation (“Alfa”) issued a $150,000 life-insurance policy to Bobby (“the Alfa policy”), which provided that “[t]he beneficiary who will receive the policy proceeds at the death of the insured is named in the application.” The application form in the record indicates that Bobby named Sandra, his wife at that time, as the sole beneficiary of the Alfa policy.
On September 27, 2004, the Walker Circuit Court entered an order terminating the marriage of Bobby and Sandra (“the divorce judgment”). The divorce judgment also divided the marital property, awarding Bobby ownership of the couple’s chicken farm, but also requiring him
“to pay to [Sandra] the sum of $500.00 per month as alimony in gross for a period of fifteen (15) years. Payments shall begin on October 1, 2004, and corn tinu[e] for a total of one hundred eighty (180) months. This is an alimony in gross award in the nature of a property settlement and is not periodic alimony. This award of alimony in gross' shall be secured by a judicial lien imposed by this order against the real property. It shall constitute a hen against the real property until the alimony in gross is paid in full and shall take priority over any subsequent hens.”
The divorce judgment further divided the parties’ personal property and financial accounts and, relevant to this case, provided:
“Each party shall retain ownership of their own life insurance pohcies. [Sandra] shall remain as the sole beneficiary on [Bobby’s] whole-life-insurance policy through Alfa which has a death benefit of $150,000.00. He shah maintain this insurance and maintain her as the beneficiary for a period of fifteen (15) years.”
It. appears that Bobby thereafter complied with the divorce judgment, maintaining Sandra as the beneficiary on the Alfa policy and paying her $500 per month until he died on December 12, 2014.
Following Bobby’s death, Alfa received notice from both Dolores and Sandra that they were claiming the proceeds of the Alfa policy. Alfa accordingly initiated an interpleader action in the Walker Circuit Court, noting the competing claims and requesting that it be allowed to deposit the disputed insurance proceeds with the court so the court could determine which party was entitled to them. The -circuit court granted Alfa’s request and, after Alfa deposited $154,109 with the court—representing the proceeds of the Alfa policy, a premium refund, and accumulated interest—Alfa was dismissed from the action pursuant to Rule 22(b), .Ala. R. Civ. P., which provides that “[a]ny party seeking interpleader .., may deposit with the court the amount claimed,.■ and the court may thereupon order such party discharged from liability as to such claims, and the action continued as between the claimants of such money or property.”
Sandra thereafter moved the circuit court to enter a summary judgment in her favor awarding her the interpleaded funds based on the undisputed facts that she was the named beneficiary of the Alfa policy and that the divorce judgment had required Bobby to keep her as the beneficiary of the Alfa policy for 15-years, or until September 2019. Dolores opposed Sandra’s summary-judgment motion, arguing that the divorce judgment had required Bobby to maintain Sandra as the beneficiary of the Alfa policy for a period of 15 years because, she argued, the Alfa policy was intended to secure the 15 years of monthly $500 alimony-in-gross payments, not to function as an award in itself. Dolores accordingly argued that Sandra was enti- *650 tied to, at most, a sum equal to the remaining unpaid alimony-in-gross payments, which she stated totaled $28,500,[1] and that the rest of the interpleaded funds properly belonged to Bobby’s estate.[2] On May 5, 2016, the circuit court granted Sandra’s motion and entered a summary judgment in her favor, explaining that “Sandra McDonald is the beneficiary under the policy. The divorce [judgment] states that she was to remain the beneficiary.” On May 12, 2016, Dolores filed this appeal.
II.
Dolores seeks the reversal of the summary judgment awarding the inter-pleaded funds to Sandra.- We review a summary judgment pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant' has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ’substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004).
III.
The law of Alabama is that “the designation of the beneficiary of a life insurance policy is governed by the provisions of the policy itself.” Gibson v. Henderson, 459 So.2d 845, 847 (Ala. 1984) (citing Williams v. Williams, 438 So.2d 735 (Ala. 1983)). The Alfa policy provides that the beneficiary is the individual designated as the beneficiary on the application form; it is undisputed that the individual designated as the beneficiary on that form in this case is Sandra. There is no evidence in the record indicating that Bobby ever attempted to remove Sandra as the beneficiary of the Alfa policy or that he even desired to do so but was prevented from acting by the terms of the divorce judgment.
This Court has made it clear that a divorce, by itself, has no impact on one spouse’s status as the beneficiary of the *651 other spouse’s life-insurance policy.[3] In Flowers v. Flowers, 284 Ala. 230, 237-38, 224 So.2d 590, 596-97 (1969), this Court rejected an attempt by the administrators of the deceased ex-husband’s estate to claim the proceeds of a life-insurance policy that named his ex-wife the beneficiary, explaining:
“We will first give consideration to the holding of the trial court to the effect that the divorce judgment, in and of itself, did not affect the right of [the ex-wife] to receive the proceeds of the certificate of insurance here in question. We agree with that holding. It is in accord with the general rule stated in Couch on Insurance, 2d Edition, Vol. 4, § 27:111, pp. 647-648, as follows:
“‘In the absence of terms in the policy indicating that the rights of the beneficiary thereunder are conditioned upon continuance of the marriage relation then existing between the "beneficiary and the insured, or the regulation of the matter by statute, the general rule is that the rights of the beneficiary in an ordinary life insurance policy, including the right to receive the proceeds thereof upon maturity of the policy, are in no way affected by the fact that the parties are divorced subsequent to the issuance of the policy, especially if no attempt is made to change thé beneficiary after the divorce, and the insured continues to keep up the payments on the policy, or where the decree was in her favor.’
“The certificate of insurance, the subject of this litigation, contains no provision to the effect that the rights of the beneficiary named therein were conditioned upon the continuation of the marriage relationship. In so far as we are advised, there is no statute in this state regulating the matter.[4] The record does not show that [the ex-husband] made any attempt to change the beneficiary in the manner provided in the certificate of insurance after the divorce and it is without dispute that the policy was in force and effect at the time of the death of [the ex-husband]. The decree of divorce was in favor of the beneficiary named in the certificate- of insurance, namely, [the ex-wife].”
See also Kowalski v. Upchurch, 186 So.3d 460, 463 (Ala. Civ. App. 2015) (reversing the trial court’s judgment holding that the deceased’s son was entitled to a payable-on-death annuity that named the deceased’s ex-husband as the beneficiary because the deceased “did not act during her lifetime to either effect the cancellation of the annuity or change the beneficiary designation”). This legal principle stems from the fact that any rights á beneficiary has to the proceeds of a life-insurance policy are contractual, not marital. Rountree v. Frazee, 282 Ala. 142, 147, 209 So.2d 424, 427 (1968).
In spite of this principle, Dolores argues that both Alabama state and federal courts have, under certain circumstances, disregarded a party’s presumptive contractual rights to the proceeds of a life-insurance policy in order to do equity and to prevent unjust enrichment. In support of her argument, Dolores cites Hanner v. Metro Bank, 952 So.2d 1056 (Ala. 2006) (recognizing the vested equitable interest a child had in his deceased father’s life-insurance *652 policy, even though the father had assigned the policy to a bank as collateral for a loan, based on the fact that a divorce judgment had previously ordered the father to name the child the irrevocable beneficiary of such a . policy); Zeigler v. Cardona, 830 F.Supp. 1395, 1398 (M.D. Ala. 1993) (finding that the named beneficiary was not entitled- to the proceeds of a life-insurance policy when the decedent had previously submitted paperwork, to change the beneficiary but no change was made because -of a clerical error by the insurer); Frawley v. U.S. Steel Mining Co., 496 So.2d 731, 735-36 (Ala. 1986) (awarding the proceeds of a life-insurance policy to the decedent’s child even though the decedent had never complied with the terms of a divorce judgment requiring him to name the child as the beneficiary of his existing life-insurance policy); and Williams v. Williams, 276 Ala. 43, 158 So.2d 901 (1963) (holding that the decedent’s children were entitled to the proceeds of a life-insurance policy instead of the named beneficiary when the decedent had been ordered in a judgment of divorce to name his children as the “irrevocable beneficiaries” of that policy, but he had nevertheless failed to do so). Sandra counters by arguing that, although these cited cases may provide two general exceptions to the rule that a named beneficiary is entitled to the proceeds of a life-insurance policy—when the decedent has failed to comply with a court order regarding the designation of a beneficiary and when the decedent has completed all the required steps to change the beneficiary but the insurer nevertheless failed to make that change—neither of these exceptions apply in the present case.
We agree that none of the cases cited by Dolores provides a basis for reversing the summary judgment. In each of the cited cases, as well as others employing the same rationale, see, e.g., McKinnis v. McKinnis, 564 So.2d 451 (Ala. Civ. App. 1990), and Posey v. Prudential Ins. Co., 383 So.2d 849 (Ala. Civ. App. 1980), the party ultimately adjudged to be the rightful recipient of disputed life-insurance proceeds had produced uncontested evidence indicating.that he or she should have previously been formally named the beneficiary of the policy in.question—either because of a court order or because the policyholder had taken all the steps required by the policy to name that party the beneficiary but the insurer had not made the change. In this case, however, there is no evidence indicating that Bobby took any affirmative action that would indicate that he did not want Sandra to be the beneficiary of the Alfa policy. One might speculate that the fact Bobby and Sandra divorced is reason enough to conclude that Bobby would not have wanted Sandra to be the beneficiary of the Alfa policy; however, such a conclusion runs contrary to Flowers and its progeny, which indicate that a divorce alone will have no. bearing on a named,beneficiary’s right to receive life-insurance proceeds-attributable to the death of an ex-spouse.[5] Moreover, speculation does not rise to the level of substantial evidence. Bosarge Offshore, LLC v. Compass Bank, 943 So.2d 782, 787 (Ala. 2006).
Finally, we note the parties’ argument regarding the nature of the requirement in the divorce judgment that Bobby maintain Sandra as the beneficiary of the Alfa policy for a 15-year period following their di *653 vorce. Dolores argues that the Alfa policy was clearly intended to secure the 15 years of alimony-in-gross payments—as evidenced, she argues, by the fact that the alimony payments and the insurance requirement both ran for 15 years and by the fact that the Alfa policy does not otherwise appear to be a property award or alimony—and she cites decisions from other jurisdictions holding that a party in Sandra’s position was entitled only to that portion of life-insurance proceeds that equaled unpaid support obligations. See, e.g., AXA Equitable Life Ins. Co. v. Cherry, 496 F.App’x 917, 920 (11th Cir. 2012) (not selected for publication in the Federal Reporter) (applying Florida law and concluding that “[bjeeause the record demonstrates that the insurance proceeds were intended as security for unpaid alimony, [the beneficiary ex-wife] has not shown that she was entitled to more than the unpaid alimony left to be paid following [her ex-husband’s] death”). Sandra, however, disputes Dolores’s claim that the divorcing court intended for the Alfa policy to act solely as security for Bobby’s alimony-in-gross obligation, invoking the legal maxim expressio unius est exclusio alterius and noting that the divorcing court specifically stated that Bobby’s alimony-in-gross obligations were to be secured by a judicial lien on the chicken farm he was awarded in the divorce judgment, while failing to state that the Alfa policy was intended to serve a similar security function. Moreover, Sandra further emphasizes that a $150,000 insurance policy would not have been needed to secure a diminishing $90,000 obligation.
However, it is ultimately unnecessary to resolve this dispute regarding the divorcing court’s intent with regard to the Alfa policy. Regardless of the exact nature of the requirement in the divorce judgment that Bobby maintain Sandra as the beneficiary of the Alfa policy for 15 years, we find the fact that Sandra was the named beneficiary on the Alfa policy at the time of Bobby’s death to be controlling. Dolores has not established that equity requires a different result, and, as a matter of contract law, Sandra is entitled to the proceeds of the Alfa policy.
IV.
After Bobby died in December 2014, his mother Dolores and his ex-wife Sandra both filed claims with Alfa seeking the proceeds of a $150,000 life-insurance policy held by Bobby at the time of his death. Alfa thereafter initiated this interpleader action, and the circuit court ultimately entered a summary judgment in favor of Sandra based on the fact that Sandra was the named beneficiary on the Alfa policy. For the reasons explained herein, that judgment is affirmed.
AFFIRMED.
Parker, Shaw, and Wise, JJ., concur.
Murdock, J., concurs in the result.

. Dolores has sworn in an affidavit that Bobby made 111 of the $500 monthly payments ($55,500) to Sandra before his death. She further states that Bobby owed Sandra 57 more monthly payments of $500 ($28,500) at the time of his death. The divorce judgment, however, required Bobby to pay Sandra $500 monthly for 180 months. Thus, if Bobby had made 111 $500 payments at the time of his death, it would appear that he still owed Sandra 69 such payments ($34,500) when he died, not 57 payments as Dolores contends. The 12-month discrepancy between Dolores’s calculations and the terms of the divorce judgment is not explained in the record.

. Dolores also argued that the proper procedure would be for all the interpleaded funds to be awarded to Bobby’s estate and for Sandra to then assert a claim against the estate for any unpaid alimony in gross she claimed was owed her.

. While this case was pending in the circuit court, the legislature enacted Act No. 2015-312, codified at § 30-4-17, Ala. Code 1975, which provides for the revocation of certain transferable interests in property in the event of a divorce or an annulment. However, neither party has cited § 30-4-17 or argued that it has any application in this case.

. See note 3, supra.

. We also note that in Flowers the husband appears to have voluntarily designated his wife as his beneficiary on a newly acquired life-insurance policy after they had separated and she had sued him for maintenance and support, thus indicating that a separation or divorce does not per se establish that a spouse would never want the other to be the beneficiary of an insurance policy on his or her life. 284 Ala. at 233, 224 So.2d at 591-92.